[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 141.]

MUENCHENBACH ET AL., APPELLANTS, *v*. PREBLE COUNTY, OHIO, ET AL., APPELLEES.

[Cite as *Muenchenbach v. Preble Cty.*, 2001-Ohio-244.]

*Political subdivision tort liability—For purposes of R.C. 2744.02(B)(1), a "use standard" is an appropriate test for determining whether a vehicle is excepted from the definition in R.C. 4511.01(B) of "motor vehicle" on the basis that it constitutes "other equipment used in construction work and not designed for or employed in general highway transportation."*

(No. 99-1930—Submitted September 12, 2000—Decided March 14, 2001.)

APPEAL from the Court of Appeals for Preble County, No. CA98-07-009.

_____

ALICE ROBIE RESNICK, J.

{¶ 1} On October 24, 1995, plaintiffs-appellants, Richard, Geraldine, and Ruth Muenchenbach, were driving north on West Florence–Campbellstown Road in Jackson Township, Preble County. As they passed the intersection of West Florence–Campbellstown Road and State Route 122, appellants drove by a small "men working" sign and two Preble County pickup trucks. After traveling about another mile and a half, appellants encountered a four-wheeled 1983 Ford Model 5610 tractor, equipped with a street-sweeping brush on the front and a scraper blade on the back, sitting motionless on the east side of the road. Richard slowed his own vehicle, sounded his horn, and attempted to pass the vehicle on the left. At that time, the tractor, which was operated by William House, a highway service worker employed by the Preble County Engineer, made a sudden left turn toward a private driveway and struck appellants' vehicle, causing it to leave the roadway and roll over into a field.

**{¶ 2}** Appellants filed a negligence action against defendants-appellees, Preble County, the Board of Commissioners of Preble County, and the Preble County Engineer. The trial court granted summary judgment in favor of appellees on the basis that they were immune from liability under R.C. 2744.02(A)(1), and the court of appeals affirmed the judgment. In so doing, both courts held that the exception to immunity contained in R.C. 2744.02(B)(1) did not apply because appellants' damages were not caused by the negligent operation of a "motor vehicle" as that term is defined in R.C. 4511.01(B). In particular, they found that the vehicle operated by House was not a motor vehicle under R.C. 4511.01(B) because it constituted excepted construction equipment.

**{¶ 3}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

**{¶ 4}** The issues presented in this case involve whether the vehicle in question was a motor vehicle pursuant to R.C. 4511.01(B), whether the immunity provided in the exception found in R.C. 2744.02(B)(1) attaches under the facts of this case, and whether, as a result of the above inquiries, material questions of fact exist that prevent the granting of summary judgment in favor of appellees.

**{¶ 5}** R.C. 2744.02(A)(1) provides:

"Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

**{¶ 6}** R.C. 2744.02(B)(1) sets forth the following exception to this broad grant of immunity:

"Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any *motor vehicle* by their employees upon the public roads, highways,

or streets when the employees are engaged within the scope of their employment and authority." (Emphasis added.)

{¶ 7} Since R.C. 2744.01(E) provides that for purposes of R.C. 2744.02, "motor vehicle" has the same meaning as in R.C. 4511.01, the question is whether the vehicle in this case is a motor vehicle as defined in R.C. 4511.01.

{¶ 8} R.C. 4511.01(B) defines "motor vehicle" as follows:

" 'Motor vehicle' means every vehicle propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires, *except* motorized bicycles, road rollers, traction engines, power shovels, power cranes, and *other equipment used in construction work and not designed for or employed in general highway transportation*, hole-digging machinery, well-drilling machinery, ditch-digging machinery, farm machinery, trailers used to transport agricultural produce or agricultural production materials between a local place of storage or supply and the farm when drawn or towed on a street or highway at a speed of twenty-five miles per hour or less, threshing machinery, hay-baling machinery, agricultural tractors and machinery used in the production of horticultural, floricultural, agricultural, and vegetable products, and trailers designed and used exclusively to transport a boat between a place of storage and a marina, or in and around a marina, when drawn or towed on a street or highway for a distance of no more than ten miles and at a speed of twenty-five miles per hour or less." (Emphasis added.)

{¶ 9} Since the only dispute in this case concerns the application of the italicized exception, the determinative issue narrows to whether the vehicle operated by House constitutes "other equipment used in construction work and not designed for or employed in general highway transportation."

{¶ 10} In addressing this issue, the courts below considered the decision of the Court of Appeals for Cuyahoga County in *Putka v. Parma* (1993), 90 Ohio App.3d 647, 630 N.E.2d 380. In that case, the plaintiffs' decedent was struck and

killed by a city-owned Model 680 H Construction King backhoe as she crossed the intersection of Spring Garden Road and Ridge Road in Parma, Ohio. At the time of the accident, the backhoe was being driven by a city employee from the city service garage to a work site. Otherwise, the vehicle was used exclusively in construction work and not designed to be operated on streets and highways.

{¶ 11} The city claimed that it was immune from liability pursuant to R.C. Chapter 2744 on the basis that the backhoe was excepted from the definition of motor vehicle under R.C. 4511.01(B) as "other equipment used in construction work and not designed for or employed in general highway transportation," and also as "hole-digging machinery" and "ditch-digging machinery." In rejecting the city's claim, the court in *Putka* applied the following test:

"[A] backhoe is not a 'motor vehicle' within the provision of R.C. 4511.01(B) if it is used for its intended purpose; however, where a backhoe is operated on the public road like any other vehicle, it cannot be exempt as a matter of law from being classified as a 'motor vehicle' on the pretext that it traveled a short distance." *Id*., 90 Ohio App.3d at 652, 630 N.E.2d at 383.

{¶ 12} The court explained that "any implication that a vehicle can roam around the public road and not be treated as a 'motor vehicle' within the meaning of R.C. 4511.01(B) would be inconsistent with the intent of the legislative exemptions. The exempted vehicles must be used for their intended purposes in order for the exemption to lie. * * * An exemption cannot be given based on what a vehicle's supposed function should be, but what it was being used for at the time of the incident." *Id*., 90 Ohio App.3d at 651, 630 N.E.2d at 383.

{¶ 13} The trial court in the present case found the reasoning in *Putka* "logical and sound and therefore persuasive." However, the trial court found that the accident in this case occurred while the vehicle was being used in construction work, rather than in general highway transportation, and rejected appellants' affidavit statements to the contrary. The court of appeals distinguished *Putka* on

the basis that "the accident in this case occurred within the construction zone," and also rejected appellants' affidavits.

{¶ 14} A large portion of appellants' affidavits is admittedly conclusory in nature. The affidavits submitted by appellees are also conclusory to the extent that they recite the definitional language of the statute. Indeed, the evidence in this case consists entirely of these affidavits, answers to interrogatories, an accident report, and several copies of photographs of the vehicle. Nevertheless, a careful examination of the record reveals that, aside from the conclusory allegations, there is sufficient evidence to create a genuine issue of material fact under the so-called "use standard" as applied to the construction equipment exception to the definition of "motor vehicle" in R.C. 4511.01(B).

{¶ 15} According to the affidavits submitted by appellees, House was working for the County Engineer on a road construction project that entailed repaving West Florence–Campbellstown Road between State Route 122 and Crawfordsville–Campbellstown Road. "Construction zone" and "men working" signs were posted at both intersections north and south of the "country block." The vehicle that House was operating on October 24, 1995, was equipped with a "slow-moving vehicle" reflector sign and two large yellow flashing lights mounted on the cab. At the time of the accident, House had just completed packing gravel berm on the east side of the highway, and was preparing to turn left into a private drive so that he could turn around and head south in order to pack down freshly dumped gravel on West Florence–Campbellstown Road.

{¶ 16} According to appellants' affidavits, there was one small "men working" sign approximately fifteen to twenty feet north of State Route 122, but no "construction zone" sign. As they passed this sign, appellants drove between two county pickup trucks, one on each side of West Florence–Campbellstown Road. The employees in these trucks were talking to each other across the road, but did not warn appellants that there was construction work further up the road. As they

drove north, appellants first observed the tractor from three-fourths of a mile away, and watched it during their entire approach. The vehicle never moved until the accident; there were no flashing yellow lights or a "slow-moving vehicle" sign on the vehicle; there was no freshly dumped gravel for House to pack down on West Florence–Campbellstown Road south of his position; and House was "by his own statement * * * involved in making a left-hand turn into a private driveway in order to turn the tractor around and return down the road * * * in order to get warm in the county pick up trucks."

{¶ 17} Based on this evidence, it appears that a genuine issue of fact remains as to whether the vehicle in this case was employed in general highway transportation at the time of the accident. Accordingly, the application of a use standard compels the conclusion that summary judgment is not appropriate under Civ.R. 56(C).

{¶ 18} However, appellees challenge the concept of a use standard as being in derogation of the statutory language and propose that we classify all vehicles equipped for and used in construction work as excepted construction equipment, regardless of how they were used at the time of the accident. It appears to be appellees' overall contention that the limiting or modifying language "used in construction work and not designed for or employed in general highway transportation" signifies an intent to classify "other equipment" on the basis of a vehicle's inherent qualities, or its general, principal, or dedicated use, rather than on the basis of its current actual use. However, the arguments advanced by appellees, and the authorities on which they rely, convince us that the opposite is true.

{¶ 19} In *Wauseon v. Badenhop* (1984), 9 Ohio St.3d 152, 9 OBR 442, 459 N.E.2d 867, the court held that a farm tractor is a "vehicle" for purposes of conviction under R.C. 4511.19, but it is not a "motor vehicle" for purposes of a license suspension under R.C. 4507.16. In so holding, we relied on R.C. 4507.03,

which provides that no person shall be required to obtain an operator's license for the purpose of driving "any farm tractor * * * temporarily drawn, moved, or propelled upon the highway," and R.C. 4501.01(B), which specifically excludes "agricultural tractors" from the definition of "motor vehicle." *Id.*, 9 Ohio St.3d at 154, 9 OBR at 443, 459 N.E.2d at 869.

{¶ 20} At the time that Badenhop was cited for driving under the influence of alcohol, he was driving the farm tractor pulling two farm wagons of people on a hayride in the city of Wauseon. Appellees correctly observe that our decision in *Badenhop* "did not cause a specifically excluded vehicle to transform into a 'motor vehicle' simply because it was being operated on a public road." More to the point, our decision to classify the tractor in *Badenhop* as an excepted agricultural tractor under R.C. 4501.01(B) was not affected by how it was being used at the time of the citation. Appellees argue, therefore, that the classification of the tractor in the present case as excepted construction equipment under R.C. 4511.01(B) should likewise not depend upon its use at the time of the accident. We disagree.

{¶ 21} R.C. 4501.01(B) and 4511.01(B) except agricultural tractors from the definitions of "motor vehicle" on the basis of their principal use, rather than on the basis of their use at any particular time. Under the definitions of "agricultural tractor" in R.C. 4501.01(C) and 4511.01(J), a vehicle is classified as an agricultural tractor when "used principally for agricultural purposes."

{¶ 22} In contrast, R.C. 4501.01(B) and 4511.01(B) do not except construction equipment from the definition of "motor vehicle" on the basis of its principal use or dedicated purpose. They do not provide that construction equipment is excepted when used "principally," "primarily," or "generally" for construction purposes, or in construction work. They do provide that, in order for other equipment used in construction work to be excepted, it must not be "employed in general highway transportation." The term "general" is very clearly used not to modify the term "employed," but to modify "highway transportation." We believe

that if the General Assembly intended for construction equipment to be classified and excepted according to its principal, primary, general, or dedicated use, regardless of how used when it causes damage or injury, then it is incumbent upon the General Assembly to so provide.

**{¶ 23}** Moreover, the court's determination in *Badenhop* was premised on the interplay of three code sections — R.C. 4501.01(B), 4507.16, and 4507.03. The application of a use standard is arguably inconsistent with the licensing exemptions granted under R.C. 4507.03, which provides:

"No person shall be required to obtain a driver's or commercial driver's license for the purpose of driving or operating a road roller, road machinery, or any farm tractor or implement of husbandry, *temporarily drawn, moved, or propelled upon the highway*." (Emphasis added.)

**{¶ 24}** However, the application of a use standard is entirely consistent with the traffic law exemptions granted under R.C. 4511.04, which provides:

"Sections 4511.01 to 4511.78, inclusive, section 4511.99, and sections 4513.01 to 4513.37, inclusive, of the Revised Code do not apply to * * * *other equipment while actually engaged in work* upon the surface of a highway within an area designated by traffic control devices, but apply to such * * * vehicles *when traveling to or from such work*.

"The drivers of * * * other vehicles utilized in * * * road surface maintenance, *while engaged in work upon a highway*, * * * shall be exempt from criminal prosecutions for violations [of specified code sections]. *Such exemption shall not apply to such drivers when their vehicles are not so engaged*." (Emphasis added.)

**{¶ 25}** In addition, aside from references to "agricultural" or "commercial" tractors, each time the term "tractor" appears generally in R.C. Chapter 4511, it is modified or qualified by the phrase "being used in constructing" or "while being used in * * * construction." See R.C. 4511.64 and 4511.69. Thus, we cannot agree

8

with appellees' assertion that *Badenhop* extends to preclude a use standard from being applied to determine whether a nonagricultural tractor constitutes excepted construction equipment for purposes of immunity under R.C. 2744.02.

{¶ 26} Appellees also rely on *Drake-Lassie v. State Farm Ins. Cos.* (1998), 129 Ohio App.3d 781, 787, 719 N.E.2d 64, 68, where the Court of Appeals for Franklin County found a "use analysis" to be "inconsistent with established rules of statutory construction." Contrary to appellees' assertions, however, *Drake-Lassie* does not stand for the proposition that use standards are inapplicable to "any of the 14 specific exclusions" contained in R.C. 4501.01(B) or R.C. 4511.01(B). Instead, a careful reading of that decision reveals that the court in *Drake-Lassie* rejected the view that holds use standards to be applicable across the board to *all* of the exceptions set forth in these statutes.

{¶ 27} The application or rejection of a use standard should not be an all-or-nothing proposition. R.C. 4501.01(B) and 4511.01(B) are syntactically constructed to provide a working definition of "motor vehicle," followed by a series of exceptions. Some of these exceptions are specific in nature and some are general in nature; some are characterized as a type of vehicle and some are distinguished by function. Some of the exceptions are followed by limiting or modifying clauses, or subject to definitional qualifications, while others stand unqualified.

{¶ 28} A use standard may be applied to determine whether a vehicle constitutes excepted construction equipment because that exception is subject to the qualification that such equipment not be "employed in general highway transportation." There has been some debate over whether, and to what extent, a use standard properly applies beyond the confines of the exception for construction equipment. See *Floch v. Farmers Ins. Group of Cos*. (1994), 97 Ohio App.3d 394, 397, 646 N.E.2d 902, 904; *Putka, supra*, 90 Ohio App.3d at 653, 630 N.E.2d at 383-384 (Nahra, P.J., dissenting); *State v. Conner* (1983), 13 Ohio App.3d 179, 13 OBR 214, 468 N.E.2d 320; *State v. Devilbliss* (C.P.1961), 16 O.O.2d 404, 406, 88

Ohio Law Abs. 592, 596, 177 N.E.2d 74, 76; 1956 Ohio Atty. Gen. Ops. No. 6474. However, the issue presented in this case has nothing to do with any exception other than the exception for construction equipment, and our decision today is so limited. Thus, it is not necessary for us to determine whether the court in *Putka* went too far in applying a use standard to any of the exceptions not modified by the phrase "not designed for or employed in general highway transportation."

{¶ 29} However, we disagree with the statement in *Putka* that a use standard may generally be applied "in determining whether a vehicle is a motor vehicle within the meaning of the statute." *Id.*, 90 Ohio App.3d at 651, 630 N.E.2d at 382. A vehicle is a motor vehicle under R.C. 4511.01(B) if it is "propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires" and does not fall within any of the enumerated exceptions. The use standard can do no more than vitiate the particular exception that justifies its application in the first place; it cannot apply to reformulate a definition of motor vehicle provided by the General Assembly.

{¶ 30} Finally, appellees rely on *Berry v. Motorists Mut. Ins. Co.* (1983), 13 Ohio App.3d 228, 13 OBR 280, 468 N.E.2d 922, and *Groff v. Motorists Mut. Ins. Co.* (May 24, 1989), Summit App. No. 13919, unreported, 1989 WL 54705. However, neither the backhoe in *Berry* nor the payloader in *Groff* was employed in general highway transportation at the time of the accident. The accident in *Berry* occurred while the backhoe was being operated off a public road, and the accident in *Groff* occurred while the payloader was performing construction work on a bridge, in a lane that was closed to traffic, with barrels having been set up to keep traffic out of the work area.

{¶ 31} For all of the foregoing reasons, we hold that for purposes of R.C. 2744.02(B)(1), a "use standard" is an appropriate test for determining whether a vehicle is excepted from the definition in R.C. 4511.01(B) of "motor vehicle" on

the basis that it constitutes "other equipment used in construction work and not designed for or employed in general highway transportation."[1]

{¶ 32} Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

Douglas, F.E. Sweeney and Pfeifer, JJ., concur.

Douglas, J., concurs separately.

Moyer, C.J., and Lundberg Stratton, J., dissent.

Cook, J., dissents.

———————————

**Douglas, J., concurring.**

{¶ 33} I concur in the well-reasoned opinion and judgment of the majority. While so doing I continue to adhere to my dissent in *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 662 N.E.2d 287.

———————————

**MOYER, C.J., dissenting.**

{¶ 34} In cases involving statutory interpretation, we are constrained by rules mandated both by legislative enactment and our own precedent. The first and foremost of these rules is that when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply the rules of statutory interpretation. *Symmes Twp. Bd. of Trustees v. Smyth* (2000), 87 Ohio St.3d 549, 553, 721 N.E.2d 1057, 1061, citing *Meeks v. Papadopulos*

———————————

1. We recognize that the determination of whether a particular vehicle falls within a definition of a "motor vehicle" is normally a question of law. However, in the specific circumstances before us in this case, the statutes at issue unavoidably compel an inquiry into whether, as a question of fact, the vehicle under scrutiny fulfilled the terms of R.C. 4511.01(B)'s exception for construction vehicles not "employed in general highway transportation."

(1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213, 404 N.E.2d 159, 161. In such a case, we do not resort to rules of interpretation in an attempt to discern what the General Assembly could have conclusively meant or intended in its debates over a particular statute—we rely only on what the General Assembly has actually said. Because I believe the majority has run afoul of this basic principle, I respectfully dissent.

{¶ 35} R.C. 2744.02(A)(1) grants political subdivisions immunity from civil causes of action, subject to several exceptions. The exception at issue here removes immunity from a political subdivision for "the negligent operation of any motor vehicle by their employees upon the public roads * * * when the employees are engaged within the scope of their employment and authority." R.C. 2744.01(B)(1). R.C. 2744.01(E) then provides that for purposes of R.C. 2744.02, the term "motor vehicle" has the same meaning as provided by R.C. 4511.01.

{¶ 36} Pursuant to R.C. 4511.01(B):

" 'Motor vehicle' means every vehicle propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires, except * * * other equipment used in construction work and not designed for or employed in general highway transportation * * * ."

{¶ 37} As a matter of statutory interpretation, this language is plain and unambiguous, conveys a clear and definite meaning, and, therefore, leaves nothing for us to interpret. See *Symmes Twp. Bd. of Trustees*, 87 Ohio St.3d at 553, 721 N.E.2d at 1061. The majority, however, has read into this statutory language a "use standard" in an attempt to further clarify that which is already perfectly clear. This approach is contrary to well-established legal principles that exist to guide the courts, and it compels the conclusion that the majority's decision is not appropriate. See *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 517, 715 N.E.2d 1062, 1113 (Moyer, C.J., dissenting).

{¶ 38} I concede that application of a "use standard" could have been appropriate if the language of R.C. 4511.01(B) created an exception for "other equipment" without any limitations or restrictions on the phrase "other equipment." In such an instance, the phrase "other equipment" would be ambiguous and our role would be to define what "other equipment" included. But that is not the statute at issue. The General Assembly created an exception for "other equipment used in construction work *and not designed for or employed in general highway transportation*." (Emphasis added.) R.C. 4511.01(B). The exception in R.C.4511.01(B) is precise, and the General Assembly has already expressly stated what type of "other equipment" is excluded from the definition of "motor vehicle."

{¶ 39} In examining this language, the majority places particular emphasis on the clause "not designed for or employed in general highway transportation." The majority concludes that the final clause, "general highway transportation," controls the entire meaning of the statute. When the entire provision is read in its entirety, however, this emphasis is misplaced.

{¶ 40} The "other equipment" exception in R.C. 4511.01(B) contains two distinct qualifications. The first is that the other equipment must be used in construction. The second qualification, connected to the first by the word "and," is that the equipment not be designed for or employed in general highway transportation. The conjunctive, "and," indicates that the language should be read in its entirety, and that the second clause modifies the first. The modifier "not designed for or employed in general highway transportation," therefore, refers not to a particular use of a specific piece of equipment at a particular moment in time, but to the design and intended "general" use of the equipment.

{¶ 41} Put more simply, "equipment used in construction work" suggests two possible images. The first is pickup trucks or automobiles used to transport people to and from the work site. The second type of equipment is heavy machinery, such as steamrollers or tractors, which perform the construction work.

13

There is no question that a pickup truck could very well be used in construction work. But it is also beyond question that a pickup truck is designed for and employed in general highway transportation—its intended general use—and would not fit the exception in R.C. 4511.01(B). Tractors, on the other hand, can be used in construction work, but have not been designed specifically for or employed in general highway transportation. The word "general" means that which is "most common; usual * * * [or] concerned with the main or overall features." Webster's New World Dictionary (3 Ed.1991) 561. Common sense would cause me to conclude that if given a choice of transporting one's children across town to a soccer match in an automobile or a tractor, the "common" or "usual" selection would be the automobile.

{¶ 42} The authority relied upon by the majority further indicates why a "use standard" affronts the plain and unambiguous language of R.C. 4511.01(B). The majority compares the "other equipment" exception in R.C. 4511.01(B) to the definition of an "agricultural tractor" as examined in *Wauseon v. Badenhop* (1984), 9 Ohio St.3d 152, 9 OBR 442, 459 N.E.2d 867. In *Wauseon*, we held that a driver of a farm tractor could not be found to have violated a statute prohibiting the driving of a motor vehicle while intoxicated. We reached this result because a farm tractor was not within the purview of "motor vehicle" as defined by R.C. 4501.01(B). *Id.* at 154, 9 OBR at 443, 459 N.E.2d at 869. In the present case, however, the majority opinion rests on the differences between the definitions in R.C. 4511.01(B) and definitions contained in other similar statutory provisions.

{¶ 43} To quote the majority:

"[T]he application of a use standard is entirely consistent with the traffic law exemptions granted under 4511.04, which provides:

" 'Sections 4511.01 to 4511.78, inclusive, section 4511.99, and sections 4513.01 to 4513.37, inclusive of the Revised Code do not apply to * * * *other equipment while actually engaged in work* upon the surface of a highway within an

area designated by traffic control devices, but apply to such * * * vehicles *when traveling to or from such work.*

"' * * *'

"In addition, aside from references to 'agricultural' or 'commercial' tractors, each time the term 'tractor' appears generally in R.C. Chapter 4511, it is modified or qualified by the phrase 'being used in constructing' or 'while being used in * * * construction.' See R.C. 4511.64 and 4511.69. Thus, we cannot agree * * * that *Badenhop* extends to preclude a use standard from being applied to determine whether a nonagricultural tractor constitutes excepted construction equipment for purposes of immunity under R.C. 2744.02." (Emphasis *sic.*) 91 Ohio St.3d 141, 147, __ N.E.2d __.

{¶ 44} The majority overlooks an important distinction between R.C. 4511.64, 4511.69, and 4511.01(B). The provisions cited by the majority to support its conclusion expressly adopt a "use standard," whereas R.C. 4511.01(B) does not.

{¶ 45} Similar statutory provisions in R.C. Chapter 4511 express limitations such as "being used in constructing," R.C. 4511.64, or "while being used in * * * construction," R.C. 4511.64 and 4511.69. This expressly stated language is the "use standard" limitation that the majority reads into R.C. 4511.01(B). This statutory direction provides that an exception exists only when the vehicle is being used in the manner indicated. Significantly, this same language is absent from R.C. 4511.01(B). Under the "other equipment" exception in R.C. 4511.01(B), there are no words limiting the exception. The General Assembly is presumed to know its own legislation and to have purposefully created distinctions in statutes that appear in the same chapter of the Code. The General Assembly, therefore, did not include a "use standard" within the express language of R.C. 4511.01(B).

{¶ 46} As a practical matter, imposing a "use standard" on the language of R.C. 4511.01(B) is logically confusing. The majority's "use standard" implies that

had the accident at issue occurred while the tractor was actually doing the work it was designed to do, it would not have been a motor vehicle and immunity would have attached. But because the tractor "had just completed packing gravel berm on the east side of the highway, and was preparing to turn left into a private drive so that he could turn around and head south in order to pack down freshly dumped gravel," 91 Ohio St.3d at 145, __ N.E.2d at __, the tractor, for a brief moment in time, is deemed to be a vehicle designed for or generally used in highway transportation. This conclusion produces a result that seeks logical support.

**{¶ 47}** It is evident from the language of R.C. 4511.01(B) that a tractor is a vehicle that is "other equipment used in construction work and not designed for or employed in general highway transportation." The rules of statutory interpretation are well settled. Where, as here, the language is clear and unambiguous and conveys a clear meaning, our interpretive inquiry is at an end. See *Symmes Twp. Bd. of Trustees*, 87 Ohio St.3d at 553, 721 N.E.2d at 1061; *Bryant v. Dayton Casket Co.* (1982), 69 Ohio St.2d 367, 369, 23 O.O.3d 341, 342, 433 N.E.2d 142, 144. Because the majority opinion eschews basic principles of statutory interpretation and produces a result inconsistent with the clear meaning of R.C. 4511.01(B), I respectfully dissent. We should affirm the judgment of the court of appeals.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

––––––––––––––––––

**COOK, J., dissenting.**

**{¶ 48}** I would affirm the judgment of the court of appeals for the reasons expressed in its opinion.

––––––––––––––––––

*Taft, Stettinius & Hollister, L.L.P.,* and *Gerald J. Rapien*; and *Herd L. Bennett*, for appellants.

*Berlon & Timmel* and *David J. Balzano*; and *Christopher L. Englert*, Preble County Assistant Prosecuting Attorney, for appellees.

January Term, 2001

_____