The STATE of Ohio, Appellee,

v.

EIKLEBERRY, Appellant.

[Cite as *State v. Eikleberry*, 184 Ohio App.3d 219, 2009-Ohio-3648.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 08CA0048.

Decided July 27, 2009.

Martin Frantz, Wayne County Prosecuting Attorney, and Latecia E. Wiles, Assistant Prosecuting Attorney, for appellee.

David C. Knowlton, for appellant.

---

DICKINSON, Judge.

## INTRODUCTION

{¶ 1} A police officer stopped Harold Eikleberry as he pulled away from a gas station because his vehicle did not have any license plates. The officer cited him under R.C. 4503.11 for driving an unregistered motor vehicle. The vehicle is a 1969 Ford F–250 pickup truck that has been customized to include a drilling rig in its bed and "corner" or "leveling" jacks on either side of the rear of the bed. At trial, Eikleberry argued that he did not have to register the vehicle because it is well-drilling machinery. The trial court concluded that it did not fall within the exception because "[t]he machinery was not being used within the intended purpose of the exemption" at the time of the stop. Eikleberry has appealed, arguing that his conviction is against the manifest weight of the evidence. This court reverses because the vehicle Eikleberry was driving is not a "motor vehicle" under R.C. 4503.11(A).

## MOTOR VEHICLE

{¶ 2} Eikleberry's assignment of error is that his conviction under R.C. 4503.11 is against the manifest weight of the evidence. When a defendant argues that his conviction is against the manifest weight of the evidence, this court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 3} R.C. 4503.11(A) provides that "no person who is the owner * * * of a motor vehicle operated or driven upon the public roads or highways shall fail to

file annually the application for registration or to pay the tax therefor." "Whoever violates this section is guilty of a misdemeanor of the fourth degree." R.C. 4503.11(D). Motor vehicles are variously defined in several sections of the Ohio Revised Code. "As used in * * * Chapter[ ] 4503 * * * '[m]otor vehicle' means any vehicle * * * that is propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires. 'Motor vehicle' does not include utility vehicles * * *, road rollers, traction engines, power shovels, power cranes, and other equipment used in construction work and not designed for or employed in general highway transportation, well-drilling machinery, ditch-digging machinery, farm machinery, and trailers that are designed and used exclusively to transport a boat * * *." R.C. 4501.01(B). "For the purposes of [S]ection [4503.11], * * * 'motor vehicle' also includes a motorized bicycle and a trailer or semitrailer whose weight is four thousand pounds or less." R.C. 4503.01. "[W]hether a particular vehicle falls within a definition of a 'motor vehicle' is normally a question of law." *Muenchenbach v. Preble Cty.* (2001), 91 Ohio St.3d 141, 148, 742 N.E.2d 1128, fn. 1.

{¶ 4} " 'In the construction of statutes the purpose in every instance is to ascertain and give effect to the legislative intent, and it is well settled that none of the language employed therein should be disregarded, and that all of the terms used should be given their usual and ordinary meaning and signification except where the lawmaking body has indicated that the language is not so used.' " *Weaver v. Edwin Shaw Hosp.*, 104 Ohio St.3d 390, 2004-Ohio-6549, 819 N.E.2d 1079, at ¶ 12, quoting *Carter v. Youngstown Div. of Water* (1946), 146 Ohio St. 203, 32 O.O. 184, 65 N.E.2d 63, paragraph one of the syllabus. Courts " 'must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act, and in the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used.' " Id. at ¶ 13, quoting *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370, paragraph five of the syllabus.

{¶ 5} In *Muenchenbach v. Preble Cty.*, 91 Ohio St.3d 141, 742 N.E.2d 1128, the Ohio Supreme Court considered the definition of "motor vehicle" under R.C. 4511.01(B), which is similar to the definition of that term under R.C. 4501.01(B). Id. at 142, 742 N.E.2d 1128. The question was whether a "four-wheeled * * * tractor, equipped with a street-sweeping brush on the front and a scraper blade on the back" was "other equipment used in construction work and not designed for or employed in general highway transportation." Id. at 142, 143, 742 N.E.2d

1128. The county argued that all vehicles used in construction fall within the exception, "regardless of how they were used at the time of the accident." Id. at 145, 742 N.E.2d 1128. The Supreme Court rejected its argument, noting that R.C. 4501.01(B) and 4511.01(B) "do not except construction equipment from the definition of 'motor vehicle' on the basis of its principal use or dedicated purpose [or] * * * when used 'principally,' 'primarily,' or 'generally' for construction purposes, or in construction work. They do provide that, in order for other equipment used in construction work to be excepted, it must not be 'employed in general highway transportation.' " Id. at 146, 742 N.E.2d 1128. It concluded that "if the General Assembly intended for construction equipment to be classified and excepted according to its principal, primary, general, or dedicated use, regardless of how used when it causes damage or injury, then it [was] incumbent upon the General Assembly to so provide." Id.

{¶ 6} In *Muenchenbach*, the Supreme Court noted that "[t]he application or rejection of a use standard [is] not * * * an all-or-nothing proposition. R.C. 4501.01(B) and 4511.01(B) are syntactically constructed to provide a working definition of 'motor vehicle,' followed by a series of exceptions. Some of these exceptions are specific in nature and some are general in nature; some are characterized as a type of vehicle and some are distinguished by function. Some of the exceptions are followed by limiting or modifying clauses, or subject to definitional qualifications, while others stand unqualified." *Muenchenbach*, 91 Ohio St.3d at 147, 742 N.E.2d 1128. Examining the exception for construction equipment, it concluded that "[a] use standard may be applied to determine whether a vehicle constitutes excepted construction equipment because that exception is subject to the qualification that such equipment not be 'employed in general highway transportation.' " Id., quoting R.C. 4501.01(B) and 4511.01(B). It declined to determine whether a use standard applied "to any of the exceptions not modified by the phrase 'not designed for or employed in general highway transportation.' " Id. at 148, 742 N.E.2d 1128, quoting R.C. 4501.01(B) and 4511.01(B).

{¶ 7} While the Supreme Court did not consider the "well-drilling machinery" exception in *Muenchenbach*, it identified factors for courts to consider in construing the other exceptions to the definition of motor vehicle under R.C. 4501.01(B). Applying those factors to the well-drilling-machinery exception at issue in this case, this court notes that it is general in nature, distinguished by function, not followed by limiting or modifying clauses, and not subject to definitional qualifications.

{¶ 8} According to the parties' joint stipulation of facts, Eikleberry's pickup truck "has been customized to include a Model F–40 Drill Rig * * * in the bed of the truck, as well as 'corner' or 'leveling' jacks in either side of the rear of

the bed." "The base of [the drill rig] covers the majority of the bed of the truck." Although not written in the stipulation of facts, the state has acknowledged in its brief that the rig is "attached to [the truck's] bed." It, therefore, appears that the rig is operated while attached to the truck. The truck does not merely transport it from one worksite to another for unloading and use apart from the truck. That the rig is used while attached to the truck is also, apparently, the reason leveling jacks have been attached to the rear of the bed, to increase stability during use.

{¶ 9} R.C. 2901.04(A) provides that "sections of the Revised Code defining offenses * * * shall be strictly construed against the state, and liberally construed in favor of the accused." Considering the broad and unqualified nature of the well-drilling-machinery exception, this court concludes that Eikleberry's vehicle comes within that exception. Unlike the construction-equipment exception at issue in *Muenchenbach*, there is no language in R.C. 4501.01(B) limiting the well-drilling-machinery exception to vehicles not "employed in general highway transportation." R.C. 4501.01(B). Accordingly, the use test applied by the Ohio Supreme Court in *Muenchenbach* does not apply in this case.

{¶ 10} The state has argued that "[t]his case does not involve an independent drilling rig, but rather involves a modified pick up truck with well drilling equipment attached to its bed." It has noted that the vehicle is still readily identifiable as a passenger pickup truck aside from the custom modifications. The state, however, has failed to explain why those distinctions make a difference under the well-drilling-machinery exception. The statute does not limit the exception to certain types of drilling rigs; it encompasses any "well-drilling machinery." R.C. 4501.01(B). According to the stipulation of facts, Eikleberry's vehicle includes a "[d]rill [r]ig" that "he uses * * * in his drilling business." The fact that Eikleberry modified a pickup truck to contain a drill rig instead of buying a vehicle built specifically for drilling is immaterial under the unqualified language of the statute.

{¶ 11} The state has also argued that the exception does not apply because the machinery was not in use at the time of the stop. It has noted that when the officer stopped Eikleberry, he was pulling away from a gas pump, travelling to a worksite in an adjacent county. Unlike the construction-equipment exception, however, there is no limitation in R.C. 4501.01(B) for times when well-drilling machinery is being employed in general highway transportation. Since the General Assembly included a limitation for construction equipment being used on public roads, it presumably could have included a similar limitation for well-drilling machinery if it did not want the exception to apply when the machinery was operated on a public road. The fact that the legislature did not include a

similar limitation indicates that it meant for the well-drilling-machinery exception to apply at all times.

{¶ 12} The state has further argued that this court should prevent Eikleberry "from circumventing the intended purpose of the exemption by using a vehicle in a manner inconsistent with all of the other exempt vehicles." It has argued that "[t]he legislative intent of R.C. 4511.01 is to prevent certain types of vehicles from being operated on the roadways" and that "[t]he legislature, presumably, did not anticipate these types of vehicles being operated on public roadways in the regular course of business, or there would be no reason to exempt operators of these vehicles from applicable traffic laws." It has argued that this court should consider the fact that licensing requirements under R.C. 4510.12, speed limits under R.C. 4511.21, and other traffic laws under R.C. Chapter 4511 all use the definition of motor vehicle in R.C. 4511.01(B).

{¶ 13} While this case involves the definition of motor vehicle under R.C. 4501.01(B), this court concludes that the General Assembly presumably knows that well-drilling machinery may use public roadways to travel from one worksite to another. It has also specifically classified some well-drilling machinery as "commercial motor vehicle[s]." See R.C. 4506.01(D)(6), defining "commercial motor vehicle" as "[a]ny single vehicle * * * that is designed to be operated and to travel on a public street or highway and is considered by the federal motor carrier safety administration to be a commercial motor vehicle, including, but not limited to, * * * a rig for drilling wells * * *." As noted previously, if it had intended for well-drilling machinery to fall outside the exception for such machinery when it was being operated on a public roadway, it could have written that in R.C. 4501.01(B). Since it did not qualify the exception for well-drilling machinery, this court concludes that it intended for the exception to apply broadly.

{¶ 14} Finally, the state has argued that applying the exception to a modified pickup truck poses a great risk of public harm because "[a] simple modification to a vehicle could exempt it from applicable traffic laws, insurance obligations, and licensing requirements." "[M]atters of public policy[, however,] are primarily the province of the legislative branch." *Am. Fin. Servs. Assn. v. Cleveland,* 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, at ¶ 65. In addition, this court disagrees that a vehicle could qualify for an exemption as easily as the state fears. As the pictures of Eikleberry's vehicle show, attaching a drill rig to the bed of a pickup truck and adding leveling jacks is not a "simple modification," as the state has argued.

{¶ 15} The trial court incorrectly determined that Eikleberry's vehicle was not "well-drilling machinery" under R.C. 4501.01(B). Although Eikleberry has argued that his conviction is against the manifest weight of the evidence, this court cannot weigh the evidence unless there is evidence to weigh. *Whitaker v. M.T.*

*Automotive, Inc.,* 9th Dist. No. 21836, 2007-Ohio-7057, 2007 WL 4554457, at ¶ 13. Since the well-drilling machinery Eikleberry was operating at the time the police officer stopped him is not a motor vehicle under R.C. 4501.01(B), there is no evidence that he was operating an unregistered motor vehicle under R.C. 4503.11(A). Accordingly, his conviction must be overturned. Eikleberry's assignment of error is sustained.

## CONCLUSION

{¶ 16} Because Eikleberry's pickup truck is well-drilling machinery, it is not subject to R.C. 4503.11(A). The judgment of the Wayne County Municipal Court is reversed.

*Judgment accordingly.*

MOORE, P.J., and WHITMORE, J., concur.