[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Fork*, Slip Opinion No. 2024-Ohio-1016.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1016

THE STATE OF OHIO, APPELLANT, *v.* FORK, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Fork*, Slip Opinion No. 2024-Ohio-1016.]

*Criminal law—Definition of "motor vehicle" in R.C. 4501.01(B) is used for penal laws and applies to offense of aggravated vehicular assault under R.C. 2903.08(A)(1)(a)—R.C. 4501.01(VV)'s qualifying language regarding principal purpose of a vehicle does not look to how vehicle was used at time of charged conduct but vehicle's principal purpose—The record was insufficient to support appellee's convictions for aggravated vehicular assault because vehicle being operated at time of charged conduct was a "utility vehicle"—Court of appeals' judgment affirmed.*

(No. 2023-0356—Submitted February 6, 2024—Decided March 21, 2024.)

APPEAL from the Court of Appeals for Sandusky County,

No. S-21-022, 2023-Ohio-242.

_____

**KENNEDY, C.J.**

{¶ 1} In this discretionary appeal from a judgment of the Sixth District Court of Appeals, we consider which definition of "motor vehicle" applies to the crime of aggravated vehicular assault. We also consider whether the Polaris Ranger (the "Polaris") involved in this case should be classified as a "utility vehicle."

{¶ 2} Appellee, Joshua Fork, was driving the Polaris under the influence of alcohol when he crashed, injuring his passengers. Appellant, the state of Ohio, charged Fork with multiple counts, including aggravated vehicular assault. At trial, there was a dispute over the applicable definition of "motor vehicle" and whether the Polaris was a motor vehicle for the purposes of that crime.

{¶ 3} Because the aggravated-vehicular-assault statute is a penal law, the definition of "motor vehicle" in R.C. 4501.01(B) applies. Further, because R.C. 4501.01(B) contains an exception for utility vehicles and because the Polaris meets the definition of "utility vehicle" under R.C. 4501.01(VV), the evidence admitted at trial was legally insufficient to support Fork's convictions for aggravated vehicular assault.

{¶ 4} We therefore affirm the judgment of the Sixth District.

## I. Facts and Procedural History

### A. The Party

{¶ 5} On a summer's night in 2020, Fork attended a party in Burgoon, Ohio. Among the many others in attendance were sisters Leah and Sarah Doering and Leah's boyfriend, Travis Perkins. As the night progressed, Fork had a couple of beers, and a little before 1:00 a.m., Fork took the Doering sisters and Travis for a ride in the Polaris. The Polaris is pictured below:



{¶ 6} With Fork driving, they sped off down the road. During the ride, Fork veered off the road and onto a dirt trail surrounded by trees and corn. Upon a fast approach into a sudden curve, the Polaris flipped and crashed. Travis was ejected from the vehicle and sustained face, head, and arm injuries, including a fractured forearm. Leah broke her wrist and two front teeth, cracked her jaw, and suffered bruising on multiple areas of her body. The police later administered a breathalyzer test on Fork, and Fork's blood alcohol content was 0.178 g/210L, or more plainly, 0.178.

{¶ 7} As a result of the crash, the state charged Fork with multiple counts, including two counts of aggravated vehicular assault, a third-degree felony, in violation of R.C. 2903.08(A)(1)(a), and two counts of operating a vehicle under the

influence ("OVI"), a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(h).

*B. The Trial*

{¶ 8} At trial, Fork testified that he bought the Polaris for "farm work" and "farm use." When asked what he used it for, Fork responded, "Farm work, hauling rocks, hauling bags of seed to the planter, removing limbs and such from the farm." When asked specifically what he used the Polaris for on the farm, Fork testified, "We use it for—we pull a sprayer with it; like I said, we pick up rocks, trim trees, haul bags of seed, just about anything you can do on the farm with it." Fork submitted five pictures of the Polaris into evidence, including the one pictured above.

{¶ 9} Travis gave additional insight into the Polaris. When asked if it was a "self-propelled vehicle," Travis testified that "[i]t had an engine." Travis also testified that the Polaris had a bed on it as well as a "farm placard," i.e., a bright orange triangle, on the back.

{¶ 10} A dispute arose between the state and Fork regarding the applicable definition of "motor vehicle" to use in the jury instructions on the charges of aggravated vehicular assault. The state asserted that R.C. 4511.01(B)'s definition of "motor vehicle" was the correct definition to apply. Fork disagreed, asserting that R.C. 4501.01(B)'s definition of "motor vehicle," the definition which applies to penal laws, was the correct definition to be used here. The trial court agreed with the state; the final jury instructions included the definition of "motor vehicle" under R.C. 4511.01(B). Fork objected to the court's decision for the record. The jury found Fork guilty on all counts.

*C. The Appeal*

{¶ 11} Fork appealed to the Sixth District. After looking to the prefatory language of both R.C. 4501.01 and 4511.01, the Sixth District held that the correct definition of "motor vehicle" as used in the aggravated-vehicular-assault statute is

found in R.C. 4501.01(B). 2023-Ohio-242, ¶ 27. Further, the Sixth District determined that based on the definition of "utility vehicle" in R.C. 4501.01(VV), it was inappropriate to classify Fork's Polaris based on how it was being used at the time of the accident, therefore rejecting the "use standard" set forth by this court in *Muenchenbach v. Preble Cty.*, 91 Ohio St.3d 141, 742 N.E.2d 1128 (2001). 2023-Ohio-242 at ¶ 39-40. As a result, the Sixth District held that a vehicle is classified as a utility vehicle based on its principal purpose. *Id.* at ¶ 40-41. Finally, the Sixth District determined that Fork's Polaris was a utility vehicle as defined in R.C. 4501.01(VV). *Id.* at ¶ 41. As a utility vehicle, the Polaris was excepted from the definition of "motor vehicle," and the court of appeals reversed the trial court's judgment and vacated Fork's convictions for aggravated vehicular assault. *Id.* at ¶ 43, 48.

{¶ 12} The state appealed, and we accepted jurisdiction, 170 Ohio St.3d 1428, 2023-Ohio-1665, 209 N.E.3d 714, to consider the following three propositions of law:

> [1.] The definition of a "motor vehicle" as it applies to R.C. 2903.08(A)(1)(a) is the definition found in R.C. 4511.01 and not the definition found in [R.C.] 4501.01 as determined by the 6th District Court of Appeals.
>
> [2.] The 6th District Court of Appeals' Application of [*State v. Eikleberry*, 184 Ohio App.3d 219, 2009-Ohio-3648, 920 N.E.2d 394 (9th Dist.)] to *Fork* is contrary to the Ohio Supreme Court's precedent defined by *Muenchenbach*.
>
> [3.] A "Use Standard" must be applied in this matter as the "Polaris" was not used for its principal purpose or any other legal purpose.

## II. Law and Analysis

### A. Standard of Review

{¶ 13} We review questions of statutory interpretation de novo. *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8. "The intention of the legislature is to be collected from the words they employ." *United States v. Wiltberger*, 18 U.S. 76, 95, 5 L.Ed. 37 (1820). Therefore, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said," *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, and apply it as written, *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18.

{¶ 14} In addition, we review a record for evidence sufficient to support a conviction by asking " 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in Smith* at 102, fn. 4. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

### B. R.C. 4501.01(B)'s Definition of "Motor Vehicle" Applies

{¶ 15} In its first proposition of law, the state asks us to determine which definition of "motor vehicle" applies in this case. The plain language of the relevant statutes guides our decision here. A person commits aggravated vehicular assault when that person, "while operating * * * a motor vehicle, * * * cause[s] serious physical harm to another person * * * as the proximate result of committing a

violation of division (A) of section 4511.19 of the Revised Code." R.C. 2903.08(A)(1)(a). A person violates R.C. 4511.19(A) if that person "operate[s] any vehicle" while "under the influence of alcohol." R.C. 4511.19(A)(1)(a). Therefore, to convict Fork of aggravated vehicular assault, the state must prove that Fork was operating a motor vehicle while under the influence of alcohol, and, in doing so, caused serious physical harm to another. *See* R.C. 2903.08(A)(1)(a).

{¶ 16} The parties do not dispute that Fork was operating a vehicle while under the influence of alcohol and that in doing so, he caused others serious physical harm. The issue is whether the vehicle Fork was operating was a motor vehicle for purposes of R.C. 2903.08(A)(1)(a).

{¶ 17} We consider two potentially applicable definitions of "motor vehicle." R.C. 4501.01(B) defines "motor vehicle" as "any vehicle * * * that is propelled * * * by power other than muscular power or power collected from overhead electric trolley wires." Utility vehicles, as defined under R.C. 4501.01(VV), are excepted from this definition. R.C. 4501.01(B). Meanwhile, R.C. 4511.01(B) defines "motor vehicle" as "every vehicle propelled * * * by power other than muscular power or power collected from overhead electric trolley wires" and that statutory division also provides exceptions to that definition. The material difference is that R.C. 4511.01(B) does not except utility vehicles from its definition of "motor vehicle." We begin and end our analysis with the plain language of these statutes.

{¶ 18} The plain language of R.C. 4501.01 and 4511.01 steers our analysis. Take R.C. 4501.01 for instance. It directs and explains that the definitions in that section are to be used for certain enumerated chapters in Title 45 of the Revised Code and for "the penal laws, except as otherwise provided." R.C. 4501.01. A "penal law" is "a law imposing a penalty (as of fine, imprisonment, loss of civil rights) on persons who do or forbear a certain act or acts." *Webster's Third New International Dictionary* 1668 (1993). A person who commits aggravated

vehicular assault in violation of R.C. 2903.08(A)(1)(a) is guilty of a third-degree felony, R.C. 2903.08(B)(1), which imposes a driver's-license suspension, R.C. 2903.08(B), and a penalty of at least 12 months in prison, R.C. 2929.14(A)(3)(a) and 2903.08(D)(1). Therefore, R.C. 2908.03(A)(1)(a) is a penal law, and R.C. 4501.01(B) provides the appropriate definition of "motor vehicle" to be used here.

{¶ 19} R.C. 4501.01 states that the definitions in R.C. 4501.01 apply to R.C. Chapters 4511 and 4513 "except as otherwise provided." R.C. 4501.01. In R.C. 4511.01, the General Assembly "otherwise provided" by directing and explaining that its definitions are to be "used in [Chapters 4511 and 4513] of the Revised Code" and by making no mention of any other applicable sections. R.C. Chapters 4511 and 4513 contain many of Ohio's traffic laws. *See Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 23 (R.C. Chapter 4511 "regulates traffic laws and the operation of motor vehicles in the state of Ohio."). By stating that the definitions in R.C. 4511.01 are confined to R.C. Chapters 4511 and 4513, the General Assembly made an express directive that any definition in R.C. 4511.01—such as R.C. 4511.01(B)'s definition of "motor vehicle"—should not be used outside of those chapters.

{¶ 20} The state resists these conclusions. It argues that it would be absurd to require two separate definitions of "motor vehicle"—one for an OVI violation and one for an aggravated-vehicular-assault offense. But the state misreads these statutes. An OVI violation occurs when a person, while under the influence of alcohol, a drug of abuse, or a combination of those things, operates a "vehicle." R.C. 4511.19(A)(1). A "vehicle" is a distinct and more broadly defined term than "motor vehicle." *Compare* R.C. 4511.01(A) *with* R.C. 4511.01(B). Nevertheless, even if an OVI violation required a different definition of "motor vehicle," we do not find the General Assembly's decision to use two separate definitions—one for penal laws and another for traffic laws—absurd. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 237-238 (2012) ("The absurdity must

consist of a disposition that no reasonable person could intend[,] * * * obviously a technical or ministerial error.").

{¶ 21} Additionally, the Ohio Jury Instructions do not control our analysis. The Ohio Jury Instructions cite R.C. 4511.01(B) as the definition of "motor vehicle" that applies to charges for aggravated vehicular assault. *Ohio Jury Instructions*, CR Section 503.08 (Rev. Jan. 23, 2010). But as explained above, such application would be contrary to the plain language of the relevant statutes. Further, the Ohio Jury Instructions "is a collection of *non-binding* model instructions." (Emphasis added.) *Ohio Jury Instructions*, Ohio Jury Instructions Guide (Rev. Nov. 2023).

{¶ 22} Therefore, we hold that R.C. 4501.01(B)—the statutory division that defines "motor vehicle" for penal laws—contains the appropriate definition of "motor vehicle" to apply to the offense of aggravated vehicular assault in R.C. 2903.08.

*C. A "Utility Vehicle" Is Defined by the Vehicle's Principal Purpose*

{¶ 23} In the state's second and third propositions of law, it argues that we should determine whether the Polaris is a "utility vehicle," as defined in R.C. 4501.01(VV), based on the "use standard" we applied in *Muenchenbach*, 91 Ohio St.3d 141, 742 N.E.2d 1128. We disagree.

{¶ 24} R.C. 4501.01(VV) defines "utility vehicle" as "a self-propelled vehicle designed with a bed, principally for the purpose of transporting material or cargo in connection with construction, agricultural, forestry, grounds maintenance, lawn and garden, materials handling, or similar activities." The plain language of this definition does not contain a "use standard" but, rather, focuses on the principal purpose of the vehicle. *Muenchenbach* and its "use standard" is therefore inapplicable to this case.

{¶ 25} In *Muenchenbach*, we determined whether, for purposes of establishing immunity for public-entity defendants under R.C. 2744.02(B), a tractor

was excepted from the definition of "motor vehicle" under R.C. 4511.01(B) for being "other equipment used in construction work and not designed for or employed in general highway transportation." *Id.* at 143; *see* R.C. 4501.01(B) and 4511.01(B). We held that for that exception to apply, the statute required us to look to the vehicle's use at the time of the accident. *Id.* at 146, 148.

{¶ 26} R.C. 4501.01(VV)'s definition of "utility vehicle" requires no such inquiry. That statute's language differs markedly from the construction-equipment exception that applied in *Muenchenbach*. As an initial matter, in *Muenchenbach*, we examined language from R.C. 4511.01(B) and 4501.01(B), which are entirely different provisions from R.C. 4501.01(VV). But most notably, the construction-equipment exception requires a determination whether the vehicle is "used in" construction and "employed in general highway transportation." R.C. 4511.01(B). For utility vehicles under R.C. 4501.01(VV), no such requirement is listed. Rather, R.C. 4501.01(VV) includes qualifying language that the vehicle must be "principally for the purpose of" one of the activities listed in the statutory division. In short, "[t]he statute says what it says," *Cyan, Inc. v. Beaver Cty. Emps. Retirement Fund*, 583 U.S. 416, 426, 138 S.Ct. 1061, 1069, 200 L.Ed.2d 332 (2018), about the vehicle's principal purpose, and it "does not say what it does not say," *id.*, about the vehicle's use. Because the plain language of the relevant statutes controls, the "use standard" we applied in *Muenchenbach* does not apply here. And because *Muenchenbach* does not apply, the state's claim that the Sixth District's application of *Eikleberry*, 184 Ohio App.3d 219, 2009-Ohio-3648, 920 N.E.2d 394, was contrary to *Muenchenbach*, is not relevant to our discussion.

{¶ 27} Therefore, we hold that because R.C. 4501.01(VV)'s qualifying language looks to the principal purpose of a vehicle and not to how the vehicle was used at the time of the charged conduct, the focus of the inquiry is on the vehicle's principal purpose.

### D. The Polaris Is a "Utility Vehicle"

**{¶ 28}** Our final determination is whether the Polaris is a "utility vehicle" as defined in R.C. 4501.01(VV). Because we conclude that applying a "use standard" is inappropriate here, we must look to the vehicle's principal purpose to determine whether the Polaris meets the statutory definition of "utility vehicle." For the reasons discussed below, we find that the Polaris meets the definition of "utility vehicle" under R.C. 4501.01(VV). Therefore, the record is insufficient to support Fork's convictions for aggravated vehicular assault.

### 1. The Polaris Is Self-Propelled and Designed with a Bed

**{¶ 29}** It is apparent from the record that the Polaris is both "self-propelled" and "designed with a bed," R.C. 4501.01(VV). When asked if the Polaris was self-propelled, Travis testified that it had an engine, and ample testimony from various witnesses regarding the Polaris's mobility leads us to the simple conclusion that it is self-propelled. Additionally, Travis testified that the Polaris had a bed, and Fork's pictures of the Polaris that were admitted into evidence support that testimony. Therefore, the Polaris meets the definition's functional requirement of being self-propelled and its design requirement of having a bed.

### 2. The Polaris's Principal Purpose

**{¶ 30}** The Polaris also meets the definition's qualifying requirement of being designed "principally for the purpose of transporting material or cargo in connection with construction, agricultural, forestry, grounds maintenance, lawn and garden, materials handling, or similar activities," R.C. 4501.01(VV).

**{¶ 31}** The pictures admitted into evidence demonstrate that the Polaris was designed for the principal purpose of transporting materials and cargo, and Fork's testimony adds further support. Fork testified repeatedly that the purpose of the Polaris was for "farm" related activities, such as "hauling rocks, hauling bags of seed to the planter, removing limbs and such from the farm," "pull[ing] a sprayer," "trim[ming] trees," and "just about anything you can do on the farm." In addition, both Travis's testimony and Fork's pictures at trial show that the Polaris had a

11

"farm placard" on the back, further indicating that its principal purpose was for farm-related activities.

{¶ 32} The state attempts to refute this, arguing that Fork's testimony that he used the Polaris outside of its principal purpose, such as driving to and from the party, matters in this case. But the Polaris's ancillary use for recreation does not affect the Polaris's principal purpose. Indeed, the state could have attempted to extract testimony about the Polaris's principal purpose, or it could have introduced evidence showing that the Polaris's principal purpose did not fit the qualifying language of R.C. 4501.01(VV). But the record is devoid of such evidence. Therefore, even when "viewing the evidence in a light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of [aggravated vehicular assault] proven beyond a reasonable doubt," *Smith*, 80 Ohio St.3d at 113, 684 N.E.2d 668, because based on the evidence, the Polaris fits the definition of "utility vehicle" under R.C. 4501.01(VV).

## IV. Conclusion

{¶ 33} There is no doubt that Fork's actions on that fateful summer night in 2020 left a lasting effect not only on him but on those involved. The state, in exercising its prosecutorial power, sought to hold Fork criminally liable based on the law that the General Assembly has provided. But as we have explained, the state misinterpreted the law. Statutory interpretation requires us to look at the plain language of the relevant statutes and no further.

{¶ 34} When performing statutory interpretation, it is important to apply the law as written. When the General Assembly begins a statute with a statement that directs the objects of such statute or explains it, courts and litigants must follow those directions and explanations. And when the General Assembly provides explicit qualifying language in a statutory definition, courts and litigants must take note of that particular language to discern the definition's meaning.

**{¶ 35}** In sum, we hold that when a statute defines "motor vehicle" for penal laws, that definition applies to the crime of aggravated vehicular assault found in R.C. 2903.08. We further hold that a statute's qualifying language regarding the principal purpose of a vehicle does not look to how the vehicle was used at the time of the charged conduct but instead focuses on the vehicle's principal purpose. Finally, because the Polaris was a "utility vehicle" as defined by statute, the evidence admitted at trial was legally insufficient to support Fork's convictions of aggravated vehicular assault.

**{¶ 36}** Therefore, we affirm the judgment of the Sixth District Court of Appeals.

Judgment affirmed.

FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

_____

Beth A. Tischler, Sandusky County Prosecuting Attorney, and Kathryn Sandretto, Assistant Prosecuting Attorney, for appellant.

Huey Defense Firm, Blaise Katter, and D. Timothy Huey, for appellee.

Steven L. Taylor, urging reversal for amicus curiae, Ohio Prosecuting Attorneys Association.

_____