[Cite as *Kerger & Hartman, L.L.C. v. Ajami*, 2015-Ohio-5157.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


Kerger & Hartman, LLC, et al.                     Court of Appeals No.  L-14-1219

    Plaintiffs                                    Trial Court No. CI0200908133

v.

Mohamad Ajami, et al.                             **DECISION AND JUDGMENT**

    Appellees                                     Decided:  December 11, 2015

[RKA Petroleum Companies,
Inc.—Appellant]

* * * * *

    Norman A. Abood, for appellee.

    Herbert Howard, pro se.

    Kevin R. Eff, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas, in which the trial court determined the validity of an attorney's charging lien and

the priority of claims against proceeds from the sale of certain property. For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} Appellant, RKA Petroleum Companies, Inc. ("RKA"), sets forth four assignments of error:

1. The trial court erred, as a matter of law, in ruling that an attorney charging lien operates as a lien against real property and in derogation of Ohio's recording statutes.

2. The trial court erred, as a matter of law, in ruling that an equitable attorney charging lien can be established and enforced in a court foreign to the litigation in which the attorney performed the work giving rise to the charging lien.

3. The trial court erred, as a matter of law, in ruling that the doctrine of lis pendens gives Appellee Norman Abood (as to the portion of his judgment not secured by his $50,000.00 mortgage - i.e., his money judgment) marshalling priority over Appellant's secured claims.

4. The trial court committed plain error in ignoring well-established principles of laches in establishing the superpriority of Appellee Norman Abood's charging lien to the detriment of properly secured third-party creditors.

2.

## Background

{¶ 3} This case has a long history involving numerous parties and claims. Briefly, on November 10, 2009, this action was filed in the trial court by the law firm of Kerger & Hartman, LLC ("the firm"), to collect attorney fees and expenses pursuant to two fee agreements. The firm named as defendants in the action: Mohamad Ajami, Hanadi Ajami, Jamil Ajami, Herbie Howard, American Petroleum Retail, Inc. and Norman Abood. In 2012, RKA moved to intervene, and filed a foreclosure complaint against numerous defendants including the firm and Abood.

{¶ 4} The parties and people relevant to this appeal are: Mohamad Ajami, who owned gas station property at 350 W. Bancroft Street, Toledo, Ohio ("the gas station") and was married to Hanadi Ajami. Hassan Harajli is Hanadi Ajami's brother and Mohamad Ajami's former brother-in-law. Hereafter, we will refer to these parties by their first names. The firm and Abood represented Mohamad. RKA is a creditor of Mohamad and has a lien on several properties including the gas station.

{¶ 5} The following facts are pertinent to this appeal. Beginning in approximately the year 2000, Mohamad and Hassan were involved in business and financial dealings with respect to the gas station. Ultimately, there was a falling out between the parties. Hassan filed a foreclosure action against Mohamad in the Lucas County Court of Common Pleas ("the first state action").

{¶ 6} In September 2004, Mohamad went to his homeland of Lebanon, where he was arrested, detained and tortured. Information in the record reveals Hassan paid

3.

$50,000 to his relative to have Mohamad unlawfully arrested and tortured. Mohamad was released from imprisonment in Lebanon as a result of the efforts of the United States Embassy in Beirut. Upon his return to the United States, Mohamad retained Abood to represent him with respect to the injuries and damages he suffered related to his arrest and torture. On October 20, 2004, Mohamad executed a fee agreement with Abood for Abood's compensation. Abood then retained the firm to assist him.

{¶ 7} In November 2004, Mohamad was hospitalized after he was severely beaten outside of his Michigan home. Information in the record shows Hassan had hired two men to beat Mohamad to prevent Mohamad from attending a proceeding in the first state action. Both of the men hired by Hassan to beat Mohamad were arrested and charged and convicted, as was Hassan.

{¶ 8} On January 17, 2006, a federal court case was filed by Mohamad and Hanadi against the Republic of Lebanon, Hassan and others. The causes of action included torture, in violation of certain laws and acts, unlawful detention, assault and battery, conspiracy to interfere with civil rights, intimidation, racketeering and loss of consortium. The record indicates Abood did most of the work on this federal case.

{¶ 9} In March 2006, Mohamad and Hanadi executed a second fee agreement with Abood for Abood's legal representation and compensation.

{¶ 10} On April 4, 2008, a settlement of the federal court case was reached which included the release of two liens held by Hassan against the gas station in the amount of $798,041.32.

4.

**{¶ 11}** The firm and Abood were not paid for their legal services. Therefore, the firm filed its complaint in 2009. The firm set forth several claims in the complaint including breach of contract, quantum meruit and fraudulent transfer. The firm and Abood ultimately reached a resolution regarding their fee splitting arrangement.

**{¶ 12}** In February 2011, Mohamad executed a $50,000 mortgage on the gas station in favor of Abood, and the mortgage was recorded on February 24, 2011.

**{¶ 13}** On April 1, 2011, Abood filed a foreclosure action in Lucas County Common Pleas Court, case No. CI0201102615, against Mohamad and others. This case was consolidated with the present case on April 15, 2011. Abood then filed a motion for summary judgment seeking judgment against Mohamad in the amount of $359,118.94 plus interest, and an order of sale of the gas station. On April 10, 2012, the court granted Abood's motion for summary judgment, finding Abood's $50,000 mortgage was valid.

**{¶ 14}** On November 13, 2012, RKA filed a motion to intervene and a foreclosure complaint. In the complaint, RKA alleged on April 8, 2009, it recovered a default judgment against Mohamad, Hanadi and A&M Investment Strategies, Inc., jointly and severally, in the amount of $245,892.91 plus interest in the Third Circuit in Michigan. On August 31, 2012, the judgment was filed for domestication in Lucas County, Ohio, and on October 1, 2012, RKA caused a certificate of judgment to be filed with the clerk of the Lucas County Court of Common Pleas. RKA alleged the judgment was a valid lien on several properties including the gas station.

{¶ 15} On January 29, 2013, the trial court issued an opinion and journal entry and found Abood was entitled to judgment in the amount of $359,118.94 plus interest, although only $50,000 of that judgment was secured by a mortgage. The court further found Abood was entitled to have his mortgage foreclosed.

{¶ 16} On April 11, 2014, Abood filed a memorandum in support of priority of attorney fee lien, requesting his lien for $359,118.94 have priority over all liens on the gas station, except those liens running with the land. RKA opposed Abood's request.

{¶ 17} On September 15, 2014, the trial court issued its findings of fact, conclusions of law, and journal entry wherein it concluded Abood was entitled to judgment in the amount of $359,118.94 plus interest, which constituted a charging lien and was first in priority after court costs, taxes, underground storages fees and utility bills. The court further decided RKA had a valid and enforceable certificate of judgment in the amount of $245,842.91, plus interest, against Mohamad and others, and the lien was third in priority after court costs, taxes, underground storages fees and utility bills.

{¶ 18} It is from this decision that RKA appeals.

### First Assignment of Error

{¶ 19} In the first assignment of error, RKA claims the trial court erred when it ruled Abood had a valid and enforceable charging lien against the gas station.

### Law

{¶ 20} Ohio recognizes two types of attorney liens: (1) general, or retaining liens, and (2) special, or charging liens. *Fire Protection Resources, Inc. v. Johnson Fire*

6.

*Protection Co.*, 72 Ohio App.3d 205, 209, 594 N.E.2d 146 (6th Dist.1991), citing *Foor v. Huntington Natl. Bank*, 27 Ohio App.3d 76, 499 N.E.2d 1297 (10th Dist.1986).

{¶ 21} The reasoning for allowing charging liens was set forth in *Cohen v. Goldberger*, 109 Ohio St. 22, 141 N.E. 656 (1923), paragraph one of the syllabus:

> [t]he right of an attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment by him obtained, and is upheld on the theory that his services and skill created the fund.

{¶ 22} Although there is no statute in Ohio which permits an attorney to attach a lien to a client's judgment, courts in Ohio have recognized such a lien. *Mancino v. Lakewood*, 36 Ohio App.3d 219, 223-224, 523 N.E.2d 332 (8th Dist.1987).

{¶ 23} Charging liens are usually superior to those of other creditors. *Garrett v. City of Sandusky*, 6th Dist. Erie No. E-03-024, 2004-Ohio-2582, ¶ 25. In fact, charging liens have been regarded as having a superpriority to other liens, including federal tax liens. *Cuyahoga Cty. Bd. of Commrs. v. Maloof Properties, Ltd.*, 197 Ohio App.3d 712, 2012-Ohio-470, 968 N.E.2d 602, ¶ 18 (8th Dist.). An attorney will only be allowed to enforce a charging lien in proper cases. *Garrett* at ¶ 25. "The decision of what constitutes a proper case is left to the sound discretion of the court of equity, the exercise of which should be based on the facts and circumstances of the case." (Citation omitted.) *Id.*

7.

## Standard of Review

{¶ 24} There is a disagreement between the parties concerning the appropriate standard of review to be applied with respect to this issue. RKA contends this issue is a question of law and a de novo standard of review should be applied, while Abood claims the proper standard of review is abuse of discretion.

{¶ 25} This court held a reviewing court will not reverse the equity court's decision to enforce an attorney's right to recover pursuant to a charging lien unless there is an abuse of discretion. *Id.* Consequently, we will apply an abuse of discretion standard to this assignment of error. An abuse of discretion connotes that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

## Arguments and Analysis

{¶ 26} RKA argues the trial court erred when it found that a charging lien can operate as an encumbrance on real property. RKA submits this is an issue of first impression in Ohio although other jurisdictions have addressed the issue and determined that an attorney charging lien does not act to encumber real property. RKA maintains under Ohio law, a lien recorded first has priority over later recorded liens, thus RKA's

8.

judgment lien is inferior to Abood's $50,000 mortgage, but takes priority over Abood's charging lien, which is the judgment in excess of the $50,000 mortgage.

{¶ 27} Abood counters the trial court correctly found this was a proper case for recognizing an attorney charging lien based on the facts in the record, including the length of time of the litigation, the number of cases in state court and federal court, the release of almost $800,000 in liens against the gas station and the credible threats of personal harm.

{¶ 28} We conclude, in light of the circumstances of this case, the trial court did not abuse its discretion in finding Abood had a valid charging lien against the gas station. The court, in its sound discretion, ruled in its September 15, 2014 decision that Abood was entitled to a charging lien as "through Mr. Abood's efforts, a substantial recovery was obtained. In addition, Mohamad specifically agreed to the charging lien in the Fee Agreements." Moreover, we observe RKA has cited no Ohio case law or statute which prohibits a trial court in Ohio from proceeding as the trial court did in this case. As no Ohio authority precludes an attorney charging lien from attaching to real property, the trial court's decision was not erroneous. Furthermore, since the trial court had a reasonable basis in law and fact to conclude Abood had a valid charging lien against the gas station, it did not abuse its discretion. Accordingly, RKA's first assignment of error is not well-taken.

9.

## Second Assignment of Error

{¶ 29} In the second assignment of error, RKA asserts the trial court erred when it ruled that a charging lien can be established and enforced in a court foreign to the litigation where the attorney performed the work giving rise to the charging lien.

## Arguments

{¶ 30} RKA contends the charging lien claimed by Abood was for legal services rendered not in the trial court but in federal court, in the 2005 federal case. Thus, RKA claims, it was improper for the trial court to award Abood a charging lien for services rendered in a foreign court. RKA notes Ohio law is scarce on the topic of the proper venue for establishing a charging lien, and cites Florida law in support of its position.

{¶ 31} Abood counters RKA did not present this argument in the trial court and is therefore barred from now raising it on appeal.

{¶ 32} In reply, RKA submits it consistently advanced the same theory, which is that lien priority with respect to the gas station should have been established based on the recorded security interests and Abood should not have been granted priority based on a "super-secret, ancient, unrecorded supposed charging lien."

## Law and Analysis

{¶ 33} A party cannot assert a new issue or legal theory for the first time on appeal. (Citations omitted.) *Abbott v. Haight Properties, Inc.*, 6th Dist. Lucas No. L-98-1413, *6, 2000 WL 491731 (Apr. 28, 2000), fn.1. "'[A] reviewing court will not

10.

consider issues that a party failed to raise in the trial court and will consider those issues waived.'" (Citations omitted.) *Id.*

{¶ 34} Here, a review of the record shows RKA raises, on appeal, the argument that the trial court erred in awarding Abood a charging lien for services rendered in a foreign court. However, RKA did not assert this argument in any of its filings in the trial court, which includes its motion to intervene, its foreclosure complaint, "RKA's Response in Opposition to Plaintiff Abood's 'Memorandum in Support of Priority of Attorney Fee Lien,'" and "RKA's Memorandum as to Doctrine of Lis Pendens." Since RKA did not raise this argument in the trial court, it is waived for appeal. RKA's second assignment of error is therefore found not well-taken.

### Third Assignment of Error

{¶ 35} In the third assignment of error, RKA argues the trial court erred when it determined the doctrine of lis pendens gave Abood's unsecured claim priority over RKA's secured claims.

### Law

{¶ 36} The doctrine of lis pendens prevents third parties, who claim they have acquired an interest in a property after service and during a foreclosure action, from challenging the judgment of the trial court. *Bates v. Postulate Invests., L.L.C.*, 176 Ohio App.3d 523, 2008-Ohio-2815, 892 N.E.2d 937, ¶ 16 (8th Dist.). Lis pendens is codified in R.C. 2703.26, which provides:

11.

When a complaint is filed, the action is pending so as to charge a third person with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title.

{¶ 37} Thus, a third party who acquires an interest in property while a lawsuit is pending "takes subject to the judgment or decree, and is as conclusively bound by the result of the litigation as if he had been a party thereto from the outset." *Cook v. Mozer*, 108 Ohio St. 30, 36, 140 N.E. 590 (1923).

{¶ 38} To invoke the doctrine of lis pendens, three elements must be established: "'(1) the property must be of a character to be subject to the rule; (2) the court must have jurisdiction both of the person and the res; and (3) the property or res involved must be sufficiently described in the pleadings.'" *Allen-Baker v. Shiffler*, 99 Ohio Misc.2d 49, 54, 715 N.E.2d 1185 (C.P.1998), quoting *Cook v. Mozer*, 108 Ohio St. 30, 37, 140 N.E. 590 (1923). With respect to the third element, Ohio courts "'have held that the property described in the complaint must be directly affected by the judgment in the pending suit.'" (Citations omitted.) *ProMedica Fed. Credit Union v. Wardrop*, 6th Dist. Lucas No. L-13-1075, 2014-Ohio-965, ¶ 25. Accordingly, the property "'must be at the very essence of the controversy between the litigants.'" (Citation omitted.) *Id.* If the subject property is real property subject to a foreclosure then the property is a proper subject for

12.

the operation of lis pendens. *Natl. City Bank v. Fruchtman*, 121 Ohio Misc.2d 92, 2002-Ohio-7445, 782 N.E.2d 695, ¶ 14 (C.P.). *See also Stone v. Equitable Mtge. Co.*, 25 Ohio App. 382, 391-392, 158 N.E. 275 (9th Dist.1927).

### Standard of Review

{¶ 39} The interpretation and application of a statute is a question of law subject to de novo review. Thus, we review de novo whether the trial court properly applied R.C. 2703.26 to Abood's unsecured claim. Under such review, an appellate court does not give deference to the trial court's determination. *See State v. Frazier*, 142 Ohio App.3d 718, 721, 756 N.E.2d 1258 (9th Dist.2001), citing *State v. Sufronko*, 105 Ohio App.3d 504, 506, 664 N.E.2d 596 (4th Dist.1995).

### Arguments and Analysis

{¶ 40} RKA contends Abood's claim in excess of $50,000 constitutes a pure money judgment and does not arise out of the gas station. RKA submits Abood sought a money judgment from the trial court with respect to his claim in excess of $50,000, "as evidenced by him seeking an 'award "in the amount of $359,118.94 * * *'" in April of 2011." RKA asserts the money judgment portion of Abood's judgment does not serve as lis pendens to disrupt RKA's priority based on its recorded security interest. RKA cites to several cases including *ProMedica Fed. Credit Union v. Wardrop*, 6th Dist. Lucas No. L-13-1075, 2014-Ohio-965, ¶ 26, in support of its position ("[A]rgument concerning lis pendens fails under the third element * * * [the] complaint did not include a description

13.

of Wardrop's residence. Even if it included such a description, Wardrop's residence was not 'at the very essence of the controversy.'").

{¶ 41} Abood counters RKA has changed its position that lis pendens does not apply at all, which RKA argued to the trial court, to lis pendens does not apply to Abood's unrecorded claim. Abood maintains, in the foreclosure complaint, he asserted a contractual right to a lien for the full amount of the legal fees due pursuant to the two fee agreements. In addition, Abood observes RKA recorded its lien well after the trial court awarded Abood judgment in the foreclosure case for $359,118.94 plus interest. Abood insists the trial court properly determined lis pendens gave him priority over RKA's later filed judgment lien.

{¶ 42} Concerning the elements necessary to invoke the doctrine of lis pendens, it is uncontested that the trial court had jurisdiction over the parties and the gas station, and that the gas station was adequately described in the pleadings. What is at issue is whether the gas station is a proper subject for the operation of lis pendens.

{¶ 43} In its September 15, 2014 decision, the trial court found "[t]he action that did trigger lis pendens is the foreclosure Complaint filed by Mr. Abood on April 1, 2011, to enforce his mortgage on the Station recorded February 24, 2011. In support of its finding, the court cited *Stone v. Equitable Mortg. Co.*, 25 Ohio App. at 391-392, 158 N.E. 275 ("A foreclosure suit describing specific property is clearly lis pendens as to such property * * *."). The trial court further found RKA, who recorded its certificate of judgment on October 1, 2012, was subject to the final outcome of Abood's claim.

14.

**{¶ 44}** Abood, in his foreclosure complaint, alleged Mohamad and Hanadi were in default of the two fee agreements and sought to foreclose on the gas station. The gas station was clearly described in the complaint and it was evident that the gas station was at the core of the controversy between Abood and Mohamad.

**{¶ 45}** The record indicates all of the elements necessary to invoke the doctrine of lis pendens are present. Moreover, the record reveals RKA acquired its interest in the gas station during the pendency of Abood's foreclosure action. Thus, we find the trial court did not err in determining the doctrine of lis pendens was triggered, and RKA's judgment lien on the gas station was affected by lis pendens such that the Abood lien had priority over RKA's lien. It follows that RKA's third assignment of error is not well-taken.

### Fourth Assignment of Error

**{¶ 46}** In the fourth assignment of error, RKA claims the trial court committed plain error in ignoring the principles of laches by establishing the superpriority of Abood's charging lien to the detriment of properly secured third-party creditors.

### Law

**{¶ 47}** Laches is the failure to assert one's right for an unreasonable and unexplained period of time, under circumstances which are prejudicial to the adverse party. *Connin v. Bailey*, 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (1984). Laches signifies a delay independent of limitations in statutes. *Id.* Laches is an affirmative defense and is waived unless presented "'affirmatively in a responsive pleading under Civ.R. 8(C) * * *.' *State ex rel. The Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d

31, 33." *Mary D. v. Frank H.*, 6th Dist. Lucas No. L-00-1005, 2000 WL 1752761, *2 (Nov. 30, 2000).

## Arguments and Analysis

{¶ 48} RKA argues Abood waited years to marshal priority based on a charging lien theory. This delay, RKA contends, is unreasonable and unexplained.

{¶ 49} Abood counters RKA did not raise the issue of laches with the trial court and cannot present it now on appeal. Notwithstanding, Abood asserts he did not delay in asserting his claim, as it was presented a little more than a year after the underlying cases concluded.

{¶ 50} RKA concedes in its reply brief that it did not use the term "laches," but insists it did attack Abood's delay in pursing the charging lien by setting forth in its response in opposition to plaintiff Abood's memorandum in support of priority of attorney fee lien filed with the trial court on May 21, 2014, that "at no point - that is, until quite recently - did Mr. Abood assert an intent to hold the first position lien."

{¶ 51} A review of the record indicates RKA did not raise the defense of laches in the trial court. RKA failed to plead any facts to indicate Abood's delay in pursing his charging lien was unreasonable or that RKA suffered prejudice as a result of the delay. RKA's statement in its pleading, made in reply to Abood's equitable subrogation argument, merely acknowledged that Abood recently asserted his intent to hold the first lien position. This statement is not sufficient to constitute a laches defense. As RKA

16.

failed to raise the doctrine of laches in the trial court, it waived the issue on appeal.

RKA's fourth assignment of error is therefore found not well-taken.

{¶ 52} The judgment of the Lucas County Court of Common Pleas is affirmed.

RKA is ordered to pay the costs of this appeal. See App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

Arlene Singer, J. _____

Stephen A. Yarbrough, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.