[Cite as *State v. Fork*, 2023-Ohio-242.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                            Court of Appeals No. S-21-022

    Appellee                                        Trial Court No.  20 CR 881

v.

Joshua E. Fork                                          **DECISION AND JUDGMENT**

    Appellant                                       Decided:  January 27, 2023

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Laura E. Alkire, Assistant Prosecuting Attorney, for Appellee.

D. Timothy Huey and Blaise Katter, for Appellant.

* * * * *

**DUHART, J.**

{¶ 1}  This case is before the court on appeal by appellant, Joshua Fork, from the

judgment issued by the Sandusky County Court of Common Pleas on November 24, 2021.

For the reasons that follow, we reverse and vacate appellant's convictions for Counts 1 and

4.

## Assignments of Error

1. There was Insufficient Evidence to Support the Conviction for Aggravated Vehicular Assault in Violation of R.C. 2903.08(A)(1)(A).

2. There was Insufficient Evidence to Support the Conviction for Tampering with Evidence in Violation of R.C. 2921.12.

## Background

**{¶ 2}** On August 22, 2020, appellant was at a party and among those in attendance were Travis Perkins, Travis's girlfriend, Leah Doering, and Leah's sister, Sarah Doering. Shortly after midnight on August 23, 2020, appellant took Travis, Leah and Sarah for a ride on his Polaris utility vehicle ("the Polaris").[1] After a short drive, appellant made a turn on a trail and the Polaris overturned. As a result, Travis was injured.[2]

**{¶ 3}** On November 13, 2020, appellant was charged by way of indictment with five counts: two counts of aggravated vehicular assault, in violation of R.C. 2903.08(A)(1), felonies of the third degree (Counts 1 and 2); one count of operating a

---

[1] The Polaris is a vehicle with one bench seat on which three people can sit, and a bed behind that seat. Both parties refer to this as a Polaris utility vehicle, and thus we do too. However, at this point in the discussion, this is merely for descriptive purposes and does not represent a legal conclusion as to whether it is a utility vehicle as that term is defined under Ohio law.

[2] Sarah was also injured. However, the convictions only relate to Travis's injuries.

2.

vehicle under the influence, in violation of R.C. 4511.19(A)(1)(a), a first degree misdemeanor (Count 3); one count of operating a vehicle under the influence, in violation of R.C. 4511.19(A)(1)(h), a first degree misdemeanor (Count 4); and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree (Count 5). The state dismissed Count 2 prior to trial. The court then renumbered Counts 2 through 4 as follows: Count 2 - operating a vehicle under the influence, in violation of R.C. 4511.19(A)(1)(a); Count 3 - operating a vehicle under the influence, in violation of R.C. 4511.19(A)(1)(h); and Count 4 - tampering with evidence.

{¶ 4} A jury trial was held at which the following relevant testimony was presented. Sarah testified that she was at a party when she was invited to take a ride on the Polaris with Leah, Travis and appellant. The four of them all sat in the one bench seat and appellant drove. Sarah did not think that appellant seemed drunk. They first drove on a public road. Sarah told appellant that he was "going really fast" and he responded that he was "going the speed limit." Next, they went off road on to a dirt path. Sarah again commented to appellant that they were "going really fast." Appellant replied that he knew what he was doing. The Polaris then rolled over onto its side and Travis was thrown from the Polaris. Leah used Travis's phone to call for an ambulance. During this period, appellant put the Polaris back upright and started it. Appellant also called for friends to come to the scene. Appellant's friends told Sarah, Leah, and Travis to get into their truck. At first they resisted as the 911 dispatch had told them not to move, but they

3.

eventually got into the truck and were driven toward the road.  When police lights became visible, they were told to get out of the truck and walk the rest of the way, which they did.

{¶ 5}  Then Leah testified.  Leah's testimony regarding the ride, the crash and the aftermath was similar to her sister's.  Leah also did not think appellant seemed "wasted."[3] She described the crash as "we're flying up to this corner, and he's not slowing down, and we just flipped."

{¶ 6}  The next witness was Travis.  He testified that he was talking to appellant for "most of the night" and he only saw appellant drink out of one beer and appellant "didn't seem to be trashed."  Travis stated that they first took the Polaris on a road, that it was going "around 58 – 60 miles an hour" on the road, and then they went off road onto a trail where appellant slowed down for "a brief second" and then "floored it."  Travis described the Polaris making a turn, where "it didn't really feel as if [appellant] hit the brakes * * * [i]t "felt like [appellant] tried to turn, and then [they] flipped, [and Travis] got ejected."  Travis also indicated that Leah, Sarah and he were "aggressively coerced to get out of the scene" and that they got into a truck and were taken part of the way to the road and then made to get out and walk the rest of the way to the ambulance.  Later, he was taken by Life Flight to a hospital.  Among his injuries were a broken nose and an open fracture to his forearm that required surgery and a permanent rod placed in his arm.

_____

[3] Although this was her testimony at trial, in the 911 tape played for the jury, Leah told the 911 operator that appellant was "drunk."

4.

{¶ 7}  After the accident, Travis saw appellant upright the Polaris, get in and "that was about when [Travis, Leah and Sarah] left."  Travis did not actually see appellant leave the scene.

{¶ 8}  Sergeant Jason Kline, from the Sandusky County Sheriff's office, then testified regarding responding to the scene of the crash and searching for appellant, because appellant had disappeared from the scene with the Polaris.  After leaving the scene, he went to the party which appellant had been at earlier.  Appellant was not at the party, so the sergeant went to appellant's house.  Appellant's wife answered the door.  After about an hour, appellant arrived home, having been driven there by his father-in-law.  Appellant went to the police station and took a breath test.  According to the printout of the test results, appellant's breath alcohol level was .178.

{¶ 9}  During Sergeant Kline's testimony, there was discussion as to whether the Polaris was a "motor vehicle."  Sergeant Kline believed it was because it "has a motor in it."

{¶ 10} Deputy William Darling from the Sandusky County Sheriff's office also testified about responding to the scene and searching for appellant.  During his testimony, the audio portion of his body cam video of that night was played, wherein appellant admitted to drinking alcohol.

{¶ 11} After the state presented its evidence, appellant made a Crim.R. 29 motion arguing that there was no testimony that Travis's injury was the direct and proximate

5.

result of appellant operating the Polaris while under the influence. Appellant further argued that the Polaris was not a motor vehicle as defined by R.C. 4501.01 and that there was no evidence to support the tampering with evidence charge. Appellant's motion was denied.

{¶ 12} Appellant then testified. He stated that he bought the Polaris for farm use and uses the Polaris for "[f]arm work, hauling rocks, hauling bags of seed to the planter, removing limbs and such from the farm" and "just about anything you can do on the farm with it."

{¶ 13} With regard to the accident, appellant explained that, although he had taken that turn many times, he had not done it with four people in the Polaris. He said he had two or three beers at the party, and then he stopped because they were going for a ride. After the crash, appellant was initially unconscious and woke up in a state of shock. As Leah was calling 9-1-1 on Travis's phone, appellant called his brother-in-law, Colin Timmons, who was close by at the party to come to the scene. Colin and a friend arrived at the scene in a truck and took Travis, Leah, and Sarah up to the road. Colin and his friend then returned to the scene, and since appellant was too shaken up to drive, Colin drove appellant in the Polaris to a nearby barn on the same property where the accident occurred. While there, appellant drank a bottle of water and called his father-in-law to come pick him up. His father-in-law picked him up and drove him home, where Sergeant Kline was waiting.

6.

{¶ 14} After the defense rested, the judge and parties discussed the jury instructions. The state requested that the court take judicial notice that the Polaris is a motor vehicle. The court did not take judicial notice. However, the court considered which definition of "motor vehicle" should be applied – R.C. 4511.01, which excludes farm machinery from the definition of "motor vehicle," or R.C. 4501.01, which excludes both farm machinery and utility vehicles from the definition. The court considered the use the Polaris was being put to the night of the crash, and that it was not being used for farming. The court decided that the definition in R.C. 4511.01(B) was the proper definition.

{¶ 15} Appellant was found guilty of all counts and was sentenced to 3 years of community control, to serve 60 days in the Sandusky County jail, 6 days of which were mandatory, and to pay a fine of $500.00.

{¶ 16} Appellant appealed, challenging only his convictions for aggravated vehicular assault and tampering with evidence.

**Standard**

{¶ 17} When considering the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Whether

7.

evidence is sufficient is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

### First Assignment of Error

{¶ 18} Appellant contends there was insufficient evidence to support his conviction for aggravated vehicular assault. Specifically, appellant argues that the state did not prove that the Polaris was a motor vehicle, as defined by the relevant statute, nor did the state prove an element of causation – that appellant was under the influence and that that impairment caused the crash.

### R.C. 2903.08

{¶ 19} Appellant was convicted of violating R.C. 2903.08(A)(1)(a), which states that "No person, while operating or participating in the operation of a motor vehicle, * * * shall cause serious physical harm to another person * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code * * *."

{¶ 20} To establish a violation of R.C. 2903.08(A)(1)(a), the state must prove "beyond a reasonable doubt that appellant (1) caused serious physical harm to another person (2) while operating his [motor] vehicle (3) as the proximate result of violating R.C. 4511.19(A)." *State v. Purdy*, 11th Dist. Lake No. 2015-L-054, 2016-Ohio-1302, ¶ 19.

{¶ 21} Appellant was convicted of violating both R.C. 4511.19(A)(1)(a) and (h) but he has not appealed these convictions. Appellant also does not dispute that Travis

8.

Perkins suffered serious physical harm as a result of the accident. Appellant does, however, dispute that he was operating a "motor vehicle" and that the accident was the proximate result of his violation of R.C. 4511.19(A).

## Proper definition of "motor vehicle"

{¶ 22} With respect to whether the Polaris is a motor vehicle, appellant takes issue with the definition of "motor vehicle" used in the jury instructions with regard to Count 1, which is the definition set forth in R.C. 4511.01(B). Appellant argues that the correct definition is found in R.C. 4501.01(B).

{¶ 23} Both R.C. 4501.01(B) and R.C. 4511.01(B) define a motor vehicle as "every vehicle propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires." Both statutes contain many exclusions, including "farm machinery." However, relevant to this appeal, R.C. 4501.01(B) also excludes "utility vehicles" from the definition of a "motor vehicle."

{¶ 24} Appellant maintains that the Polaris is an exception to the definition of "motor vehicle," since it qualifies both as "farm machinery" and as a "utility vehicle," thus, the state did not establish the necessary element of operation of a motor vehicle,

{¶ 25} The state counters that appellant incorrectly characterizes his assignment of error as a claim based on the sufficiency of the evidence, when he is actually challenging whether the court used the correct jury instruction. The state observes Ohio Jury Instructions ("OJI"), CR Section 503.08 (Rev. Jan. 23, 2010) cites to R.C. 4511.01 for the

9.

definition of "motor vehicle" with respect to aggravated vehicular assault under R.C. 2903.08.

{¶ 26} We disagree with the state. Although appellant takes issue with the jury instruction, it is in the context of the larger argument that, when considering the correct definition of "motor vehicle," the Polaris is excluded, and therefore appellant cannot be found to be operating a motor vehicle for purposes of R.C. 2903.08(A)(1)(a). Further, as to the definition of "motor vehicle" set forth in OJI, we note that "[n]either trial courts nor appellate courts are bound to follow Ohio Jury Instructions ("OJI") as being a proper pronouncement of the law." *Rayoum v. Adams*, 6th Dist. Lucas No. L-97-1370, 1998 WL 421589, *2 (July 24, 1998). The Ohio Supreme Court has "warned that the language of OJI 'should not be blindly applied in all cases.'" *Id.*, quoting *State v. Burchfield*, 66 Ohio St.3d 261, 263, 611 N.E.2d 819 (1993). Hence, we must "conduct our own review of the instruction provided in this case relative to the pertinent law." *Id.*

{¶ 27} Our review of the statutory language makes clear that the correct definition of "motor vehicle" for purposes of R.C. 2903.08(A)(1)(a) is the definition in R.C. 4501.01. R.C. 4501.01 states that it applies to the "penal laws" unless otherwise provided. This is in contrast to the text of R.C. 4511.01, which limits its use to Chapters 4511 and 4513 of the Revised Code. *See also State v. Wilson*, Slip Opinion No. 2022-Ohio-3202, ¶ 10, 18 (When considering whether to apply the definition of "operate" found in R.C. 4511.01 to a violation of R.C. 4510.14, the court noted that R.C. 4511.01

10.

"applies by its own terms to only R.C. Chapters 4511 and 4513," although the court did ultimately find the definition relevant.).

{¶ 28} Next, we must determine whether the Polaris at issue is a "motor vehicle" as defined by R.C. 4501.01, or whether it fits within an exception. "[T]he determination of whether a particular vehicle falls within a definition of a 'motor vehicle' is normally a question of law." *Muenchenbach v. Preble Cty.*, 91 Ohio St.3d 141, 148, 742 N.E.2d 1128 (2001), fn. 1.

{¶ 29} Appellant asserts that the Polaris is excluded from the definition of "motor vehicle" as it is a "utility vehicle." R.C. 4501.01(VV) defines a "utility vehicle" as "a self-propelled vehicle designed with a bed, principally for the purpose of transporting material or cargo in connection with construction, agricultural, forestry, grounds maintenance, lawn and garden, materials handling, or similar activities."

{¶ 30} The state counters the Polaris should be considered a motor vehicle as on the night in question, it was being used for transportation. The state points out that the trial court considered this use when it decided which definition to apply

### Relevant Case Law

#### *Badenhop*

{¶ 31} In *City of Wauseon v. Badenhop*, 9 Ohio St.3d 152, 459 N.E.2d 867 (1984), the Ohio Supreme Court decided that a farm tractor driven on public roads was not a motor vehicle under R.C. 4501.01(B), as it was excluded from the definition. Based in

11.

part on this conclusion, the Ohio Supreme Court determined that the trial court erred in suspending a defendant's license pursuant to R.C. 4507.16, which, at the time, required suspension if a person was convicted of, or pled guilty to operating a "motor vehicle" while under the influence of alcohol. *Id.* at 153-54. Although the *Badenhop* court did not discuss whether the use of the vehicle should be considered, the Ohio Supreme Court later noted that the decision "to classify the tractor * * * as an excepted agricultural tractor under R.C. 4501.01(B) was not affected by how it was being used at the time of the citation." *Muenchenbach*, 91 Ohio St.3d at 146, 742 N.E.2d 1128.

### Putka

{¶ 32} In *Putka v. City of Parma*, 90 Ohio App.3d 647, 630 N.E.2d 380 (8th Dist.1993), the Eighth District Court of Appeals applied a use standard to determine whether a city-owned backhoe being driven on a city street was a "motor vehicle" within the meaning of under R.C. 4511.01(B) or whether it was excluded from the definition as "other equipment used in construction work" or "hole-digging machinery" or "ditch-digging machinery." The Eighth District held that "[t]he exempted vehicles must be used for their intended purposes in order for the exemption to lie. * * * An exemption cannot be given based on what a vehicle's supposed function should be, but what it was being used for at the time of the incident." *Id.* at 651. As the backhoe was being operated on a public road at the time of the accident, the court found it was not exempted from the definition of "motor vehicle." *Id.* at 652.

12.

*Muenchenbach*

**{¶ 33}** In M*uenchenbach,* the Ohio Supreme Court considered the application of a use standard. Plaintiffs brought a negligence action against Preble County defendants to recover for damages caused when a tractor equipped with a street-sweeping brush and a scraper blade made a left turn on a public road and hit the plaintiff's vehicle. *Muenchenbach*, 91 Ohio St.3d at 142, 742 N.E.2d 1128. The trial court granted summary judgment to the governmental defendants on the basis they were immune from suit; the appellate court affirmed. *Id*. Both lower courts found that the exception to immunity found in R.C. 2744.02(B)(1), which creates liability for political subdivisions for damages caused by the negligent operation of a "motor vehicle," did not apply as the tractor constituted "construction equipment" which is excepted from the definition of "motor vehicle" under R.C. 4511.01(B). *Id.* The Ohio Supreme Court identified the determinative issue as 'whether the vehicle *** constitutes 'other equipment used in construction work and not designed for or employed in general highway transportation." *Id.* at 143. The Supreme Court found that, when considering the use the vehicle was being put to at the time of the accident, there is a genuine issue of fact as to whether at the time of the accident the vehicle was being "employed in general highway transportation." *Id*. at 145. However, the Preble County defendants challenged the concept of a use standard, arguing that all vehicles equipped for and used in construction work should be considered construction equipment excepted from the definition of

13.

"motor vehicle" regardless of how the vehicle was used at the time of the accident. *Id.* In contemplating this issue, the Ohio Supreme Court applied the language of the statute and held:

> The application or rejection of a use standard should not be an all-or-nothing proposition. R.C. 4501.01(B) and 4511.01(B) are syntactically constructed to provide a working definition of "motor vehicle," followed by a series of exceptions. Some of these exceptions are specific in nature and some are general in nature; some are characterized as a type of vehicle and some are distinguished by function. Some of the exceptions are followed by limiting or modifying clauses, or subject to definitional qualifications, while others stand unqualified. *Id.* at 147.

{¶ 34} The court ultimately held that "a 'use standard' is an appropriate test for determining whether a vehicle is excepted from the definition in R.C. 4511.01(B) of 'motor vehicle' on the basis that it constitutes 'other equipment used in construction work and not designed for or employed in general highway transportation'" because "that exception is subject to the qualification that such equipment not be 'employed in general highway transportation.'" *Id.* at 147, 148. The court limited its decision to the exception for construction equipment and did not determine whether the court in *Putka* "went too far in applying a use standard to any of the exceptions not modified by the phrase 'not designed for or employed in general highway transportation.'" *Id.* at 148.

14.

*Eikleberry*

{¶ 35} In *State v. Eikleberry*, 184 Ohio App.3d 219, 2009-Ohio-3648, 920 N.E.2d 394 (9th Dist.), the defendant was cited for driving an unregistered motor vehicle under R.C. 4503.11. *Id*. at ¶ 1. The vehicle was a 1969 Ford F-250 pickup truck customized with a drilling rig in its bed and "corner" or "leveling" jacks on the sides of the rear of the bed. *Id.* The defendant contended that the vehicle did not need to be registered as it fell within an exception for "well-digging machinery." *Id.* The trial court found the vehicle did not qualify for the exception because it was not being used for the intended purpose of the exception at the time of the stop. *Id.*

{¶ 36} The Ninth District Court of Appeals, when analyzing whether the vehicle qualified as a "motor vehicle" as defined by R.C. 4501.01(B), noted that when interpreting statutes, "none of the language employed therein should be disregarded, and that all of the terms used should be given their usual and ordinary meaning and signification except where the lawmaking body has indicated that the language is not so used." *Id*. at ¶ 4.

{¶ 37} The Ninth District also looked to *Muenchenbach* and the factors identified there for courts to consider when construing exceptions to the definition of "motor vehicle" other than construction equipment. *Id*. at ¶ 7. These factors include whether the exception is specific or general in nature, whether it is characterized as a type of vehicle or distinguished by function, and whether the exception is "followed by limiting or

15.

modifying clauses," "subject to definitional qualifications," or is unqualified. *Id*. at ¶ 6,

The *Eikleberry* court applied those factors to the "well-drilling machinery" exception and found that that exception is "general in nature, distinguished by function, not followed by limiting or modifying clauses, and not subject to definitional qualifications."[4] *Id*. at ¶ 7.

{¶ 38} However, the *Eikleberry* court did not apply the *Muenchenbach* use test because, unlike the construction equipment exception, the definition for "well-drilling machinery" was not limited to vehicles "not 'employed in general highway transportation,'" but rather was "broad and unqualified." *Id*. at ¶ 9. The court therefore found that the pick-up truck fell within the exception for "well-drilling machinery" and overturned the conviction. *Id*. at ¶ 11. The court reasoned that "[s]ince the General Assembly included a limitation for construction equipment being used on public roads, it presumably could have included a similar limitation for well-drilling machinery if it did not want the exception to apply when the machinery was operated on a public road. The fact that the legislature did not include a similar limitation indicates that it meant for the well-drilling-machinery exception to apply at all times." *Id*.

### Analysis and Conclusion

{¶ 39} Upon review, we find the reasoning in *Eikleberry* persuasive. The Supreme Court in *Muenchenbach* did not advocate for a use test for all of the exceptions to the definition of "motor vehicle." Instead, the court considered the language specific to the

---

[4] R.C. 4501.01 does not contain a further definition for "well-drilling machinery."

exception for construction vehicles which includes that the vehicle not be "employed in general highway transportation."

{¶ 40} Here, we are considering whether the Polaris falls within the exception for "utility vehicle." The definition for "utility vehicle" in R.C. 4501.01(VV) does not include the language "not *** employed in general highway transportation." Instead, the definition focuses on the general type of vehicle and principal *purpose*. Therefore, we do not find a use test appropriate. Accordingly, we look to the plain language of the statute to determine whether the Polaris is a "utility vehicle." [5]

{¶ 41} A "utility vehicle" is defined by the Statute as "a self-propelled vehicle designed with a bed, *principally for the purpose* of transporting material or cargo in connection with construction, agricultural, forestry, grounds maintenance, lawn and garden, materials handling, or similar activities." (Emphasis added) R.C. 4501(VV). Principal purpose, as included in the statutory definition, implies a utility vehicle could

---

[5] This analysis is consistent with the Ohio Supreme Court's treatment of a similar exclusion for "agricultural tractor," which is included in the definition of the exclusion for "farm machinery" and is defined as "any self-propelling vehicle that is designed or used for drawing other vehicles or wheeled machinery, but has no provisions for carrying loads independently of such other vehicles, and that is used principally for agricultural purposes." R.C. 4501.01(C) and (U). In *Muenchenbach,* the Ohio Supreme Court distinguished its treatment of the agricultural tractor in *Badenhop* on a number of bases, including by noting that "R.C. 4501.01(B) and 4511.01(B) except agricultural tractors from the definitions of 'motor vehicle' on the basis of their principal use, rather than on the basis of their use at any particular time," whereas those same statutes "do not except construction equipment from the definition of 'motor vehicle' on the basis of its principal use or dedicated purpose, but instead require, in order for other equipment used in construction work to be excepted, it must not be 'employed in general highway transportation.'" *Muenchenbach*, 91 Ohio St.3d at 146, 742 N.E.2d 1128

17.

serve another purpose or use without losing its designation of "utility vehicle." When considering the evidence in the record, we find that the Polaris fits the definition of a "utility vehicle."

{¶ 42} The Polaris is a self-propelled vehicle with a bed, and appellant testified without contradiction that its principal purpose was for "[f]arm work, hauling rocks, hauling bags of seed to the planter, removing limbs and such from the farm." He additionally testified that they pull a sprayer with the Polaris and "just about anything you can do on a farm with it."

{¶ 43} As we have found the Polaris is a utility vehicle and it is excluded from the definition of "motor vehicle," the actual use at the time of the incident is irrelevant. We need not consider whether it also qualifies under the exception for "farm machinery." Further, as we have found that appellant was not operating a motor vehicle, the state has not presented sufficient evidence that appellant violated R.C. 2903.08(A)(1)(a), which requires that the state prove that appellant was operating a motor vehicle. This finding resolves appellant's first assignment of error. Therefore, we need not consider his alternative argument – that there was insufficient evidence that appellant was impaired and that that impairment proximately caused the accident. Accordingly, appellant's first assignment of error is therefore well-taken.

## Second Assignment of Error

{¶ 44} Appellant contends that there was insufficient evidence to support his conviction for tampering with evidence under R.C. 2921.12.

{¶ 45} As relevant here, R.C. 2921.12 prohibits any person, "knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted," from concealing or removing any thing, "with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶ 46} The state's position is that the tampering with evidence charge was based upon the movement of the Polaris from the site of the crash to a nearby barn. Appellant contends that there is no evidence that he was the one that moved the Polaris from the site of the crash. The state counters that the evidence demonstrated that appellant flipped the Polaris back onto its wheels and turned it on and that both Leah and Travis thought appellant was trying to leave the scene. Additionally, the state argues that the evidence establishes that appellant summoned his brother-in-law to the scene "in order to conceal himself and the Polaris from law enforcement."

{¶ 47} After reviewing the evidence, we do not find that a rational trier of fact could determine beyond a reasonable doubt that appellant removed the Polaris from the scene of the crash. There is no evidence that appellant himself removed the Polaris from the scene, nor is there evidence that appellant called his brother-in-law in order to

19.

facilitate the removal of the Polaris.  We therefore find appellant's second assignment of error well-taken.

{¶ 48} For the foregoing reasons, we find that substantial justice has not been done to the party complaining, and the judgment of the Sandusky County Court of Common Pleas is reversed.  Specifically, appellant's convictions for aggravated vehicular assault, in violation of R.C. 2903.08(A)(1)(a) and tampering with evidence, in violation of R.C. 2921.12(A)(1), are reversed and vacated, and the charges against him dismissed.  Pursuant to App.R. 24, the state is hereby ordered to pay the costs incurred on appeal.

Judgment reversed
and vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                           _____
                                                             JUDGE

Gene A. Zmuda, J.

_____

Myron C. Duhart, P.J.                              JUDGE
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.