[Cite as *Bd. of Trustees Wood Cty. Property Trust Agreement, UAD June 4, 2008 John F. Nixon, Chairman v. Melcher*, 2025-Ohio-1000.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Board of Trustees of the Wood
County Property Trust Agreement,
UAD June 4, 2008 John F. Nixon,
Chairman

       Appellee

v.

Denis McAnally, et al.

       Appellees

[Michael R. Melcher – Appellant]

Court of Appeals No.  WD-24-006

Trial Court No.  2022 CV 0425

**DECISION AND JUDGMENT**

Decided:  March 21, 2025

* * * * *

J. Douglas Ruck for appellee, Board of Trustees of
the Wood County Property Trust Agreement, UAD
June 4, 2008 John F. Nixon, Chairman

Marjan Neceski, for appellant, Michael R. Melcher

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant Michael R. Melcher appeals the judgment of the Wood County

Court of Common Pleas, granting summary judgment in favor of appellee Board of

Trustees of the Wood County Property Trust Agreement, UAD June 4, 2008 John F.

Nixon, Chairman ("Trustees"), on the parties' competing claims for a declaratory judgment interpreting the trust agreement. For the following reasons, the trial court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} Rodney and Laura Nixon created a trust to hold a 48-acre parcel of property located at 0 Webster Road in Wood County, Ohio, which was to be used as a youth camping facility. Article IV of the trust agreement provided, however, that if "it is no longer practical" to use the land as a youth camping facility, it shall be sold in the following manner:

> A. Dennis McAnally and Michael Melcher shall have a joint option to purchase said property (as joint owners) at 75% of the then fair market value as determined by an appraiser selected by a majority of the Ultimate Beneficiaries over the age of 21. Closing costs and expenses from such a sale are to be paid and allocated as customary for standard real estate transactions in the area. If either of them is no longer living at the time of the disposition of said property, the survivor may exercise this option alone. This option does not pass to the heirs of either or both of them.
> B. Should Dennis McAnally and Michael Melcher be both unwilling or unable to exercise this option, and said property is being farmed or operated as an orchard by another party, an option shall be extended to said party allowing them to purchase said property under the same terms and conditions covered in "A" above.
> C. Should there be no option exercised under paragraphs A and B above, said property is to be sold for the fair market value at its highest and best use.

{¶ 3} Dennis McAnally lives in the residence directly adjacent and has served as an informal caretaker of the property for many years. He also presently sits on the board of trustees for the trust. Melcher previously operated an apple orchard on the premises but abandoned it several years before the events giving rise to this case.

2.

**{¶ 4}** At the annual meeting on December 1, 2021, the Trustees decided that it was no longer practical to use the property as a youth camping facility. In response to an inquiry, McAnally informed the Trustees that he did not intend to jointly purchase the property with Melcher. The Trustees then offered to sell the property to Dean Ameling, who is currently farming the property, and who was also present at the meeting. A purchase contract was drafted and signed to sell the property to Ameling for $286,912.50, which is 75% of the appraised value.

**{¶ 5}** On the eve of the closing of the sale, the title company required a "release" from all parties named in the trust agreement, including Melcher. The release was drafted by the attorney for the trust, and stated that the signer,

> hereby releases the Right of First Refusal to Purchase granted to him by Rodney Nixon and Laura Nixon, Grantors, of the Wood County Property Trust Agreement dated June 4, 2008, in Article IV – Liquidation of Trust Real Property relating to the real estate located in Webster Township, Wood County, Ohio, and more fully described as:
>
> See EXHIBIT A attached hereto and incorporated herein
>
> I hereby release and forever discharge any Right of First Refusal to Purchase granted to me under said Trust Agreement.

(Emphasis sic.)

**{¶ 6}** McAnally signed the release, but stated in his affidavit that

> At that time, I understood Defendant Melcher would be executing a similar release due to the fact that it was a joint purchase option. I do not have a copy of said release document, but I have never delivered or sent the release document to [the chairman of the Trustees]; nor have I authorized its recording except contemporaneously with that of Defendant Melcher upon sale to Defendant Ameling. I did not and do not intend the release to serve as a release of any of my rights except the right to exercise a joint

3.

tenancy with Defendant Melcher, which is the sole right which I, and the other Trustees, believe and understand the Trust language to grant.

(Emphasis sic.) Melcher refused to sign the release and indicated his desire to purchase the property on his own.

{¶ 7} Considering Melcher's refusal, the Trustees initiated the present matter by filing a complaint for declaratory judgment against McAnally, Melcher, and Ameling, seeking an order from the trial court that the joint option granted by the trust to McAnally and Melcher may only be exercised by them jointly. Melcher answered and filed a counterclaim against the trust and crossclaims against McAnally and Ameling, seeking a declaratory judgment and specific performance that the trust must sell the property to him.

{¶ 8} Ultimately, the parties filed competing motions for summary judgment. The Trustees argued that the trust created only a joint option to purchase the property, and not an individual option that Melcher could exercise by himself. Thus, since McAnally did not want to purchase the property jointly with Melcher, the trust should be allowed to sell the property to Ameling.

{¶ 9} Melcher responded that McAnally disclaimed his interest in the trust property, and consequently under R.C. 5815.36 he is treated as predeceasing Melcher. Melcher argued, therefore, that as the "survivor," he may execute the purchase option alone. Further, he argued that even if McAnally did not disclaim his interest, the property could not be sold to Ameling because *both* McAnally and Melcher were not unwilling or unable to exercise the option.

4.

{¶ 10} The trial court granted the Trustees' motion for summary judgment, denied Melcher's motion for summary judgment, and entered a declaratory judgment that the trust agreement provides only a joint purchase option, which forecloses Melcher from purchasing the property alone.[1] It concluded that R.C. 5815.36 did not apply because McAnally's release was not delivered to the Trustees and was not filed with the county recorder. As a result, because McAnally was unwilling, Melcher was unable to jointly purchase the property.

## II. Assignment of Error

{¶ 11} Melcher timely appeals the trial court's judgment, asserting four assignments of error for review:

1. The trial court erred when it found that the McAnally release was not effective or binding under Ohio Revised Code Section 5815.36(M), as "not delivered or recorded."

2. The trial court erred when it failed to find that through the McAnally release of his interest in the trust agreement, he was to be treated as having died under the trust agreement and Ohio Revised Code 5815.36(G)(3), and, as a result, the option to purchase should have been given to Melcher under Article IV of the trust agreement.

---

[1] The trial court specified that Melcher could purchase the property alone under Article IV, Section C of the trust agreement if Ameling was unwilling or unable to purchase the property under Section B.

3. The trial court erred when it found that Article IV of the trust agreement allowed the trust to offer the property to Ameling to purchase before being offered to Melcher.

4. The trial court erred when it failed to declare that Melcher could exercise his option to purchase the property under the trust agreement.

### III. Analysis

{¶ 12} Melcher's assignments of error all relate to the trial court's award of summary judgment and will be addressed together.

{¶ 13} An appellate court reviews the grant of summary judgment under a de novo standard of review. *Koler v. Grand Harbour Condo. Owners Assn.*, 2014-Ohio-1299, ¶ 5 (6th Dist.), citing *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment should be upheld when there is no issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to one conclusion that is adverse to the party against whom the motion for summary judgment is made. *Id.*, quoting *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 14} At issue in this case is the interpretation of the trust agreement and the application of R.C. 5815.36. "A court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent." *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 14, quoting *Domo v. McCarthy*, 66 Ohio St.3d 312 (1993), paragraph one of the syllabus; *Wyper v. DuFour*, 2019-Ohio-1035, ¶ 14 (6th Dist.). The construction of a written trust is a matter of law that is reviewed de novo. *Id.*

6.

Similarly, "[t]he interpretation and application of a statute is a question of law subject to de novo review." *Kerger & Hartman, L.L.C. v. Ajami*, 2015-Ohio-5157, ¶ 39 (6th Dist.). The paramount concern in statutory construction is the legislative intent. *Sullivan-White v. Aukland*, 2023-Ohio-141, ¶ 58 (6th Dist.), citing *State ex rel. Steele v. Morrissey*, 2004-Ohio-4960, ¶ 21. "'The intention of the legislature is to be collected from the words they employ.'" *State v. Fork*, 2024-Ohio-1016, ¶ 13, quoting *United States v. Wiltberger*, 18 U.S. 76, 95 (1820).

{¶ 15} In his brief, Melcher argues that he has an option to purchase the property alone under Section A of Article IV of the trust agreement because McAnally is treated as predeceased pursuant to R.C. 5815.36(G)(3), and that the trial court erred when it determined that R.C. 5815.36 did not apply. Specifically, he argues that McAnally's "release" was delivered, and that it did not need to be recorded for purposes of R.C. 5815.36. In response, the Trustees contend, inter alia, that McAnally's "release" was not a disclaimer as contemplated under R.C. 5815.36, and thus the statute is not implicated at all.

{¶ 16} Upon de novo review, the Trustees are correct, and it is evident that Melcher's arguments are merely an attempt to misapply the disclaimer statute to achieve a result that frustrates the settlors' clear intent.

{¶ 17} R.C. 5815.36 allows a beneficiary under a nontestamentary instrument to "disclaim, in whole or in part, the succession to any property by executing and by delivering, filing, or recording a written disclaimer instrument in the manner provided in

7.

this section." R.C. 5815.36(B)(1). "Disclaim" is not defined in the statute, but its common meaning in this context is "[t]o renounce or disavow a legal claim to." DISCLAIM, Black's Law Dictionary (12th ed. 2024). "Renounce" likewise means "[t]o give up or abandon formally (a right or interest); to disclaim <renounce an inheritance>." RENOUNCE, Black's Law Dictionary (12th ed. 2024).

{¶ 18} The property interest in this case is "a joint option to purchase [the] property (as joint owners) at 75% of the then fair market value." Importantly, the option itself is the property interest. At no point did McAnally state that he renounced, disavowed, gave up, or formally abandoned possessing that option. Instead, as recounted by the chairman of the board of trustees, McAnally stated at the December 1, 2021 annual meeting, that "he was not interested in purchasing the property" and that "he was not interested in exercising the option in Article IV.".

{¶ 19} A distinction exists between disclaiming the option and declining to exercise the option. Under the former, McAnally would renounce, or give up, the property interest of the option to choose whether to purchase the property jointly with Melcher. Under the latter, McAnally would accept the property interest of the option and decline to exercise it by choosing not to purchase the property. The facts in this case demonstrate that McAnally accepted the option and then declined to exercise it, as evidenced by his statements to the Trustees that he was not interested in purchasing the property and was not interested in exercising the option. If he had disclaimed the option, he would have abandoned his right to make any choice at all about whether he wanted to

8.

exercise it. Since he made a choice, there was no disclaimer, and R.C. 5815.36, therefore, does not apply.

{¶ 20} Moreover, McAnally's subsequent "release" did not, and could not, retroactively disclaim the option. R.C. 5815.36(D) provides that "[t]he disclaimant shall deliver, file, or record the disclaimer, or cause the same to be done, *prior to accepting any benefits of the disclaimed interest . . ..*" (Emphasis added.). *See also generally Ohio Natl. Bank of Columbus v. Miller*, 57 N.E.2d 717, 718 (2d Dist. 1943) ("'[A] beneficiary under a will is not bound to accept a legacy or devise therein provided for, but may disclaim or renounce his right under the will… provided he has not already accepted it.'"); *Clark v. Beyoglides*, 2021-Ohio-4588, ¶ 39 (2d Dist.).

{¶ 21} The critical fact here is that the release occurred after McAnally had already articulated his decision to not exercise the option. Indeed, the release was only necessary because the title company requested it after the trust moved forward under Section B of Article IV to sell the property to Ameling, which it did after McAnally verbally expressed his unwillingness to purchase the property jointly with Melcher. Consistent with this, he explained that he "[did] not intend the release to serve as a release of any of my rights except the right to exercise a joint tenancy with Defendant Melcher." McAnally's pro forma release, therefore, is ineffective to disclaim under R.C. 5815.36 a property interest that he had already accepted and chose not to exercise.

{¶ 22} Turning to the application of Article IV of the trust agreement, Section A provides that McAnally and Melcher have "a joint option to purchase [the] property (as

9.

joint owners) at 75% of the then fair market value." If, however, "either of them is no longer living at the time of the disposition of said property, the survivor may exercise this option alone." The intent of the settlors from this language is that McAnally and Melcher could only purchase the property as joint owners, unless one of them was no longer living at the time of disposition. Because they are both still living, and because Melcher cannot rely on the legal fiction that McAnally predeceased him under R.C. 5815.36, they can only purchase the property as joint owners; Melcher does not have a right to purchase the property individually.

{¶ 23} Finally, Section B of Article IV provides that "[s]hould Dennis McAnally and Michael Melcher be both unwilling or unable to exercise this option," an option shall be extended to a party that is farming or operating an orchard on the property to purchase the property under the same terms. "Both" as used in Section B modifies "Dennis McAnally and Michael Melcher," meaning that Section B applies where McAnally *and* Melcher are each unwilling or unable to exercise the joint option to purchase the property as joint owners. Here, McAnally is indisputably unwilling to exercise the joint option to purchase the property jointly with Melcher. Necessarily then, Melcher is unable to purchase the property jointly with McAnally. Consequently, Section B requires that an option to purchase the property be given to Ameling because he is farming on the property.

{¶ 24} Accordingly, the trial court did not err when it granted the Trustees' motion for summary judgment, denied Melcher's motion for summary judgment, and entered a

declaratory judgment that the trust agreement provides only a joint purchase option, which forecloses Melcher from purchasing the property alone.  Melcher's assignments of error are not-well taken.

## IV. Conclusion

{¶ 25} For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed.  Melcher is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE


Gene A. Zmuda, J.
CONCURS IN JUDGMENT
ONLY.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.